Don Springmeyer, Esq.
Nevada State Bar No. 1021
Justin C. Jones, Esq.
Nevada State Bar No. 8519
Bradley Schrager, Esq.
Nevada State Bar No. 10217
WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120-2234
Telephone: (702) 341-5200/Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: bschrager@wrslawyers.com
Email: jjones@wrslawyers.com

*Attorneys for Plaintiffs (additional counsel listed in signature block)*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BROOKE CARDOZA, an individual; CODY C. HANCOCK, an individual; each on behalf of himself/herself, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BLOOMIN' BRANDS, INC., a Delaware Corporation; OSI RESTAURANT PARTNERS, LLC, a Florida Limited Liability Company; OUTBACK STEAKHOUSE OF FLORIDA, LLC, a Florida Limited Liability Company; OS RESTAURANT SERVICES, LLC, a Florida Limited Liability Company; and DOES 5 through 100, Inclusive,<br><br>Defendants. | CASE NO.:<br><br><br><br><br><br>**COMPLAINT - FLSA COLLECTIVE ACTION**<br><br>** JURY TRIAL DEMANDED |

Plaintiffs Brooke Cardoza and Cody C. Hancock (herein "Plaintiffs") through undersigned counsel, on behalf of themselves and all persons similarly situated, allege as follows:

**INTRODUCTION**

1. This lawsuit is a class and collective action brought by Plaintiffs, on behalf of themselves and all similarly situated non-exempt hourly employees of Bloomin' Brands, Inc., OSI Restaurant Partners, LLC, Outback Steakhouse of Florida, LLC, and OS Restaurants Services, LLC, and DOES 5 through 100 (herein collectively "Defendants"), jointly and severally, to recover for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. The class of non-exempt hourly employees of Defendants is referred to herein as the "Class."

2. This lawsuit is a result of Defendants' failure to pay Plaintiffs and other similarly-situated employees who are members of the Class defined herein all earned wages.

3. Plaintiffs bring this action as a collective action pursuant to the FLSA to recover unpaid minimum and overtime wages. Plaintiffs, as a Class, are current and former employees of Defendants, who worked or are working as hourly employees including but not limited to host, bartender, server, head wait server, line cook, prep cook, take-away person, trainer, dishwasher, and busser.

4. All the aforementioned employee types are hourly positions.[1] All the aforementioned hourly positions are non-exempt.

5. Specifically, Plaintiffs complain that Defendants violated the FLSA by requiring their hourly workers to appear for work and work at times for which they were not compensated. Plaintiffs bring this action as a nation-wide collective action pursuant to 29 U.S.C. § 216(b).

6. Due to Defendants' uniform policies and practices, Plaintiffs and the members of the Class have experienced the following and were:

   i. required to appear and start work ten to fifteen minutes prior to scheduled shifts (referred to as "Outback Time");

   ii. prohibited from clocking in; and/or

   iii. required not to clock in for the full amount of hours they worked and thus were

---

[1] http://www.outback.com/our-company/careers/hourly (last visited October 4, 2013).

1                               not paid for the hours they worked; and/or

2               iv.        prohibited from taking mandated, paid and unpaid breaks; and/or

3               v.        prohibited from receiving pay for mandated training and testing; and/or

4               vi.        prohibited from receiving proper pay for training others; and/or

5               vii.        prohibited from receiving pay for mandated company meeting and events.

6         This was accomplished by requiring employees to be present ten to fifteen minutes prior to a scheduled shift on "Outback Time," by refusing to allow employees to take paid and unpaid breaks, by requiring that the employees perform prescribed work before clocking in, by refusing to pay employees for time spent in mandatory training sessions online, by refusing to pay training employees compensation as agreed upon, and by refusing to allow lunch and dinner breaks and forcing employees to work while they ate. Defendants furthermore, in failing to provide breaks, failed to provide reasonable break time for Plaintiff Cardoza and similarly situated employees to express breast milk for nursing children and failed to provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public.

        7.        Plaintiffs and the Class members presently work or have worked for periods of time for which they have not been paid at all. Plaintiffs and the Class members presently work or have worked in excess of forty (40) hours in individual work weeks, but were not paid at a rate of one and one-half (1.5) times their regular rate of pay or minimum wage as required by the FLSA, 29 U.S.C. §§ 206-207.

        8.        Plaintiffs allege on behalf of the Class that their unpaid wage claims include: (i) unpaid wages from Defendants for hours worked for which they did not receive wages; (ii) unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay; (iii) unpaid wages from Defendants for mandatory paid breaks that were never permitted; and (iv) unpaid wages from Defendants for mandatory training.

        9.        The individuals Plaintiffs seek to represent in this action include current and former non-exempt hourly employees that worked for Defendants at an "Outback Steakhouse" Restaurant in the United States, at any time in the past three years. Plaintiffs contend that Defendants'

improper timekeeping and pay policies and practices resulted in the failure to properly compensate their hourly workers with minimum pay and overtime pay as required under applicable federal law.

10. Plaintiffs seek a declaration that their rights, and the rights of other Class members, were violated, an award of unpaid wages, an award of liquidated damages, and an award of attorneys' fees and costs to make them whole for damages suffered.

11. Plaintiffs also bring this action on behalf of themselves and all other similarly situated employees of Defendants who have experienced or are potentially subject to retaliation in violation of 29 U.S.C. § 215(a)(3) for participating in this lawsuit.

## PARTIES

12. Plaintiff Brooke Cardoza is a citizen of the State of Nevada who is currently employed as a server by the Defendants at an Outback Steakhouse Restaurant in Clark County, Nevada. During the past thirteen years, approximately, Plaintiff Cardoza has worked for Defendants at various and multiple Outback Steakhouse restaurants and held various non-exempt hourly positions.

13. Plaintiff Cody C. Hancock is a citizen of the State of Nevada who is employed as a server by the Defendants at an Outback Steakhouse Restaurant in Clark County, Nevada. During the past ten years, approximately, Plaintiff Hancock has worked for Defendants at various and multiple Outback Steakhouse restaurants and held various non-exempt hourly positions.

14. Defendant Bloomin' Brands Inc. ("Bloomin'" or "Bloomin' Brands"), an entity incorporated in Delaware, is one of the world's largest casual dining companies with approximately 91,000 domestic Team Members and more than 1,400 restaurants throughout 48 states, Puerto Rico, Guam, and 20 countries.[2] One of Bloomin' Brands restaurant brands is Outback Steakhouse, an Australian themed casual dining restaurant, which claims to be committed to consistently delivering high-quality food and service, generous portions at a down under value

---

[2] http://www.bloominbrands.com/ourcompany/ (last visited October 4, 2013).

in a fun, casual atmosphere suggestive of the Australian Outback.[3] Further, Bloomin' Brands, Inc. is a company of restaurants that owns and operates Outback Steakhouse, Carrabba's Italian Grill, Bonefish Grill, Roy's Restaurant, and Fleming's Prime Steakhouse & Wine Bar.[4] Bloomin' Brands owns an interest in over 278 subsidiary entities, including OSI Restaurant Partners, LLC, which owns Outback Steakhouse of Florida, LLC, which in turn owns OS Restaurant Services, LLC.[5]

15.     Defendant OSI Restaurant Partners, LLC ("OSI") is a limited liability company organized under the laws of the State of Florida, and is the managing member of Outback Steakhouse of Florida, LLC and conducts business directly in the State of Nevada and through its subsidiaries, in the State of Nevada.[6]

16.     Defendant Outback Steakhouse of Florida, LLC ("Outback") is a limited liability company organized under the laws of the State of Florida, and has conducted business directly as a foreign limited liability company in the State of Nevada and through its subsidiaries, in the State of Nevada.[7] Defendant owns and operates Outback Steakhouse restaurants for Bloomin' Brands. Defendant Outback touts that "[t]his is who we are and it's the foundation for our culture – we'll break the rules to do what it takes to make sure we deliver a dining experience that's just right each and every time."[8] As of June 2013, Outback was associated with 769 restaurants across the United States.[9]

---

[3] http://www.bloominbrands.com/ourcompany/ourbrands.aspx (last visited October 4, 2013).

[4] http://www.outback.com/our-company/about-us (last visited October 4, 2013).

[5] http://investors.bloominbrands.com/secfiling.cfm?filingID=1546417-13-38&CIK=1546417 (last visited October 4, 2013).

[6] http://nvsos.gov/sosentitysearch/CorpDetails.aspx?lx8nvq=YaMsDFon3pzJS8POXBB%252bRQ%253d%253d&nt7=0 (last visited October 4, 2013).

[7] *Id.*

[8] http://www.outback.com/our-company/press-room/2013/09/03/outback-steakhouse-breaks-the-rules-with-new-no-rules-just-right-campaign (last visited October 4, 2013).

[9] http://files.shareholder.com/downloads/AMDA-ZYBGR/2705767174x0x684774/DEEDC814-2ECC-4C49-9B22-FB1A505EADF7/Bloomin_Brands_Q2.pdf (last visited October 4, 2013).

-5-

17. Defendant OS Restaurant Services, LLC ("OS") is a subsidiary of Bloomin' Brands and is a limited liability company organized under the laws of the State of Florida, and has conducted business directly as a foreign entity in the State of Nevada. Defendant OS leases, owns and operates restaurants for Bloomin' Brands.

18. The Outback Steakhouse restaurants in Nevada are owned and operated by the Defendants.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq*.

20. Specifically, pursuant to section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), this court has original jurisdiction over these claims by Plaintiff Cardoza and Plaintiff Hancock, and all others similarly situated, who file a consent to sue within three years of the acts complained of herein. The consents are attached hereto as **Exhibit "1."**

21. This Court has jurisdiction over this FLSA Collective Action pursuant to 29 U.S.C. § 216(b), which provides that a suit under FLSA "may be maintained against any employer…in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

22. This Court further has jurisdiction because Defendants have been and continue to be employers engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. § 206(a) and 29 U.S.C. § 207(a).

23. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of the Plaintiffs herein occurred within this judicial district, and Defendants each regularly conduct business in and have engaged and continue to engage in the wrongful conduct alleged herein -- and, thus, are subject to personal jurisdiction in this judicial district.

**COMMON FACTUAL ALLEGATIONS**

24. Three of the most basic protections afforded by the FLSA are the entitlement of

employees (i) to be paid for all hours worked, (ii) to be paid a minimum wage, and (iii) to be paid premium overtime compensation for all hours worked in excess of forty (40) hours per week, unless such employees are shown to be exempt from such protections.

25. In violation of these basic protections, Plaintiffs and the members of the Class were (i) not lawfully paid for all hours worked, including but not limited to all time above and beyond forty (40) hours in each work week, (ii) not paid the applicable minimum wage, and (iii) not paid premium overtime compensation for all hours worked in excess of forty (40) hours per week.

26. Defendants are the employers and/or joint employers of Plaintiffs and the members of the Class within the meaning of the FLSA.

27. Defendants operate and/or control, directly and/or through Bloomin's sole ownership of its subsidiaries, the Outback Steakhouse restaurants at which Plaintiffs and the members of the Class work and/or worked (collectively, "the Restaurants").

**A.     Bloomin' Centrally Controls the Restaurants**

28. Bloomin' is a Fortune 1000 company which generated revenue from restaurant operations in excess of $3.8 billion in 2011, and $3.9 billion in 2012.

29. Bloomin', through its wholly-owned subsidiaries named above, owns and operates approximately 1,500 restaurants under brand names including Outback Steakhouse, Carraba's Italian Grill, Bonefish Grill, Flemings Prime Steak & Wine Bar, Roy's Restaurant, and Outback Steakhouse International.

30. Over 90% of Bloomin's restaurants in the United States are owned by Bloomin' or its wholly-owned subsidiaries, as opposed to franchisees, and Bloomin' does not have any restaurants under franchise in Nevada.

31. Bloomin' and its subsidiaries, including OSI, Outback Steakhouse, and OS, occupy the same principal place of business: 2202 N. West Shore Blvd, Suite 500, Tampa, Florida 33607-5761.

32. Each of the corporate Defendants has at least one officer or director or manager or membership interest in common, and most of the Defendants have multiple shared officers,

managers, and/or directors. OSI is the managing member of Outback Steakhouse, which is the managing member of OS. OSI lists Chris Sullivan, Andrew Balson, Michael J. Chu, Elizabeth A. Smith, and Mark Nunnelly as managers and Joseph Kadow as vice president.[10] Bloomin' lists Joseph Kadow as vice president, Elizabeth Smith as CEO and director, Andrew Balson, Mark Nunnelly, Chris Sullivan, and Michael J. Chu as directors.[11]

33. The Restaurants are designed exclusively by Bloomin', including not only the Restaurants' layout and decor, but also the music played in the restaurant. Upon information and belief, the Restaurants rarely, if ever, deviate from Bloomin's decor and music selections.

34. Bloomin' maintains control, oversight, and direction over the operation of the Restaurants, including their employment and/or labor practices.

35. The Restaurants are directly managed and controlled by Bloomin' to make sure that they strictly conform to Bloomin's policies and practices.

36. The Restaurants are visited regularly by all levels of supervision of Bloomin' to help ensure that the Restaurants strictly adhere to all aspects of Bloomin's standards.

37. Each of the Restaurants is operated under detailed operations manuals issued by Bloomin' that cover all aspects of restaurant operations.

38. Each of the Restaurants is operated under the brand name, "Outback Steakhouse," and offers a menu which is created exclusively by Bloomin'. Upon information and belief, none of the Restaurants deviate from Bloomin's menus.

39. Applicants for hourly positions at Outback Steakhouses are diverted to Bloomin's website and online application forms.[12]

40. Bloomin' implements centralized training for managers in each of the Restaurants.

---

[10] http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail/EntityName/forl-m08000000872-8300a057-c0e5-41a8-b2db-03ec0cb34ec3/OSI%20Rest/Page1 (last visited October 4, 2013).

[11] http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail/EntityName/forp-f08000004904-fd0a9b7f-bda3-4592-aa72-1fd40e3ad19d/Bloomin/Page1 (last visited October 4, 2013).

[12] https://www.bloominbrandscareers.com/systems/AssessCore/Survey/TestBattery.aspx (last visited October 4, 2013).

41. Bloomin' issues similar standardized training manuals and handbooks for each of the Restaurants operating under the Outback Steakhouse name.

42. Founded in 1988, Bloomin' Brands is the parent company that owns and operates Outback Steakhouse, Carrabba's Italian Grill, Bonefish Grill, Roy's Restaurant, and Fleming's Prime Steakhouse & Wine Bar.

43. All of the employees who work at the Restaurants are required to attend Bloomin' Brands, Inc. University, previously known as OSI University, (collectively herein "BBI University") for mandatory online courses.

44. BBI University's online courses are setup to be accessible from home and/or personal devices of the workers.

**B.    Defendants' Uniform and Unlawful Wage Practices**

45. Bloomin' (i) creates uniform wage policies and practices for use at the Restaurants, (ii) controls the Restaurants by imposing its uniform wage policies and practices at the Restaurants, and (iii) maintains a centralized human resources function which oversees the implementation of Bloomin's wage policies and practices at the Restaurants.

46. Outback Steakhouse and OS each operate Restaurant locations which implement Bloomin's uniform policies and practices. Bloomin' requires and monitors compliance with its policies.

47. Bloomin' maintains a steadfast, single-minded focus on minimizing its labor costs. Two fundamental foci of this policy—ingrained in its managers—are the need to have as many tasks as possible performed by as few employees as possible, and a strict restraint on the payment of overtime wages.

   **1.    Off-the-Clock Work and "Outback Time"**

48. Bloomin' employs a uniform electronic timekeeping system for tracking and reporting employee hours worked at the Restaurants. The system allows and requires employees to punch in and out for their shifts.

49. The Defendants use the system at all of the Restaurants.

50. Hours worked by all hourly employees are reported from the Restaurants through the system to Bloomin's centralized human resources function, operated by OS.

51. Bloomin' monitors the hours worked at the Restaurants.

52. The hours worked by Plaintiffs and the members of the Class were uniformly manipulated by Bloomin' and the operating Defendants to avoid reporting time worked. Plaintiffs and the members of the Class were routinely not paid for time worked, including but not limited to overtime.

53. Pursuant to Bloomin's uniform policies, the managers of the Restaurants are responsible for the day-to-day operation of each restaurant.

54. Pursuant to Bloomin's uniform policies, the managers of the Restaurants are responsible for ensuring compliance with the operating standards of Bloomin'.

55. Pursuant to Bloomin's uniform policies, the managers of the Restaurants are responsible for knowing, understanding, and complying with all of the federal labor and employment laws applicable to their restaurant.

56. Pursuant to Bloomin's uniform policies, the managers of the Restaurant have pay plans which link their compensation to their financial success at Bloomin'.

57. Pursuant to Bloomin's uniform policies, the managers of the Restaurants have bonuses that contribute significantly to their overall compensation and which are linked, in part, to the total labor hours that employees work.

58. Pursuant to Bloomin's uniform policies, the managers of the Restaurants have the authority from Bloomin' to edit and adjust the work hours recorded for employees in the system.

59. Pursuant to Bloomin's uniform policies, which were implemented by the Defendants, Plaintiffs and the members of the Class were required and/or permitted to work for the benefit of Bloomin' and the Defendants when they were not contemporaneously logged into the system as present and working.

60. Pursuant to Bloomin's uniform policies, which were implemented by the Defendants, Plaintiffs and the members of the Class were required to arrive at work on "Outback

1 Time," ten (10) to fifteen (15) minutes prior to the start of their specified times for scheduled work
2 shifts, and were required to perform work before using the electronic system to begin logging
3 hours worked.

4      61.     Pursuant to Bloomin's uniform policies, the Defendants systematically reduced the
5 number of workers scheduled to perform tasks, while not reducing the amount of tasks required,
6 thereby requiring workers to begin their day prior to times when they could "clock-in."
7 Specifically, workers responsible for preparing the Restaurant for opening each day (i.e.
8 "openers") were required to work up to two hours prior to opening, but forced to "clock-in" only
9 thirty (30) minutes prior to opening.

10      62.     Pursuant to the uniform policies, which were implemented by the Defendants,
11 Plaintiffs and the members of the Class were threatened with losing their jobs if they did not arrive
12 at work on Outback Time.

13      63.     Pursuant to the uniform policies, which were implemented by the Defendants,
14 Plaintiffs and the members of the Class were required to work upon arrival on Outback Time.

15      64.     Pursuant to Bloomin's uniform policies, which were implemented by the
16 Defendants, Plaintiffs and the members of the Class could only log into the system during a
17 discrete clock-in interval at the beginning of their shifts: no earlier than five (5) minutes before a
18 scheduled shift. After the clock-in time expired, Plaintiffs and the members of the Class needed to
19 obtain authorization of the store manager to log into the system.

20      65.     As a result of the above uniform timekeeping practices, the timekeeping records of
21 Defendants do not reflect the total time worked by Plaintiffs and the members of the Class. The
22 total time worked by Plaintiffs and the members of the Class is substantially understated.
23 Furthermore, the timekeeping records of Defendants do not reflect the fact that Plaintiffs and the
24 members of the Class worked in excess of forty (40) hours per week.

25      66.     Bloomin's uniform timekeeping practices provide managers of the Restaurants with
26 a computer report at the end of a given shift which details when an employee clocked in or out of
27 his or her shift.

28

67. The failure of the records of Defendants to reflect the correct total time worked by Plaintiffs and the members of the Class and the time in excess of forty (40) hours per week is known by Defendants.

68. The amount of time for which Plaintiffs and members of the Class are/or were required to work but are not paid is not insubstantial, insignificant, nor de minimus.

**2.    Paid and Unpaid Breaks**

69. Defendants prohibited non-exempt hourly employees from taking mandatory fifteen (15) minute breaks.

70. Defendants prohibited non-exempt hourly employees from taking mandatory meal breaks.

71. Upon information and belief, Defendants were aware that non-exempt hourly employees were not being provided paid and unpaid breaks as it is reflected in the timekeeping records of Defendants, which is reviewed by Defendants.

**3.    Incentive Pay for Training Denied**

72. Defendants implemented a policy for on-the-job training, wherein an existing seasoned employee ("Trainer") in a non-exempt hourly position would train new employees in the similar position.

73. Defendants promised to pay $1.00 to $2.00 per hour, in addition to the standard hour rate of pay, as incentive pay for Trainers, during training sessions.

74. Defendants in fact refused to pay Trainers the incentive pay for training sessions, but forced employees to train in addition to their existing responsibilities.

75. Upon information and belief, Defendants were aware that non-exempt hourly employees were not being provided the incentive pay as it was reflected in the timekeeping records of Defendants, which is reviewed by Defendants.

**4.    Mandatory Training Sessions and Tests**

76. Bloomin' employs a uniform training system for all employees working at the Restaurants. The system, previously referred to as BBI University, allows Defendants to create,

implement, track, and maintain standards and control.

77. The Defendants use the system at all of the Restaurants.

78. BBI University's online courses are setup to be accessible from an employee's home and/or personal devices.

79. Pursuant to Bloomin's uniform policies, the managers of the Restaurants are responsible for ensuring that the workers complete the necessary BBI University courses online.

80. Pursuant to Bloomin's uniform policies, the managers of the Restaurants are responsible for ensuring that the workers complete semiannual tests of the certain guideline and menu items.

81. Pursuant to Bloomin's uniform policies, the managers of the Restaurants are responsible for ensuring that the workers complete semiannual tests of the certain guideline and menu items. The tests are mandated and created by Bloomin' to ensure uniformity and knowledge of menu items and promotions.

82. Hours worked are tracked and reported from the BBI University online operating system to Bloomin's centralized human resources function and to Defendants.

83. Defendants monitor the hours in online training and the courses completed by workers of the Restaurants.

84. The hours worked by Plaintiffs and the members of the Class were uniformly manipulated by Bloomin' and the operating Defendants to avoid reporting time worked. Recently, upon information and belief, even though Bloomin' still tracks the hours, Bloomin' stopped displaying the amount of time workers were spending in online training courses in order to shield the specific time from Plaintiffs and the members of the Class. Plaintiffs and the members of the Class were routinely not paid for time worked, including but not limited to overtime.

85. Pursuant to Bloomin's uniform policies, the workers are required to spend significant time training at BBI University, studying for mandated written tests and completing written tests, but are not paid for such time.

86. Defendants avoided paying overtime to Plaintiffs and the members of the Class for

work performed in excess of forty (40) hours per week by paying them bonuses in the amount of their regular rate of pay, not at a rate of one and one-half (1.5) times their regular rate of pay or minimum wage.

87. As a result of the above uniform practices, the timekeeping records of Defendants do not reflect the total time worked by Plaintiffs and the members of the Class.

88. The total time worked by Plaintiffs and the members of the Class is substantially understated. Furthermore, the timekeeping records of Defendants do not reflect the fact that Plaintiffs and the members of the Class worked in excess of forty (40) hours per week.

89. The failure of the records of Defendants to reflect the correct total time worked by Plaintiffs and the members of the Class and the time in excess of forty (40) hours per week is known by Defendants.

90. Attendance and participation in unpaid training programs is (a) not voluntary; (b) directly related to the employees' job; and (c) the employees do not perform any other productive work during such attendance.

91. Attendance and participation in studying for and test taking is (a) not voluntary; (b) directly related to the employees' job; and (c) the employees do not perform any other productive work during such attendance.

**5.     Mandatory Meetings and Events**

92. Bloomin' employs a uniform method for managers to conduct periodic staff meetings wherein all employees working at the Restaurants are required to attend.

93. Pursuant to Bloomin's uniform policies, employees are unable to clock in to the system which tracks employee hours for such meetings.

94. Pursuant to Bloomin's policies employees working at the Restaurants are required to attend and work at marketing events for the company at least one time a year.

95. Pursuant to Bloomin's uniform policies, employees are unable to clock in to the system which tracks employee hours for such events, and are specifically informed that they do not receive pay for such events.

96. As a result, the records of the Defendants do not reflect the correct total time worked by Plaintiffs and the members of the Class and the time is known by Defendants.

## COLLECTIVE ACTION ALLEGATIONS

97. Plaintiffs bring this action on behalf of the Class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, 215(a)(3), and 216(b).

98. The Class members Plaintiffs seek to represent include:

> All current and former non-exempt hourly Outback Steakhouse employees that worked for Defendants in the United States, at any time in the past three years, and to whom Defendants failed to pay the applicable federal minimum wage for all hours worked and/or failed to pay overtime for work performed in excess of forty (40) hours per week based upon Defendants' common policies and/or practices.

99. The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

100. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are over five thousand individuals in the Class.

101. The claims of Plaintiffs are typical of the claims of the Class. Plaintiffs and the members of the Class work or have worked for Defendants at the Restaurants and were subject to the same operational, compensation and timekeeping policies and practices, including not being paid for all hours worked; and have been or are in danger of being retaliated against for seeking the compensation they are owed.

102. Common questions of law and fact exist as to the Class which predominate over any questions only affecting them individually and include, but are not limited to, the following:

> i. Whether Plaintiffs and the members of the Class were/are required, suffered, or permitted to: (i) appear and start work ten to fifteen minutes prior to scheduled shifts; (ii) prohibited from clocking in; (iii) required not to clock in for the full amount of hours they worked and thus were not paid for the hours they worked;

      (iv) prohibited from taking mandated, paid and unpaid breaks; (v) prohibited from receiving pay for mandated training; (vi) prohibited from receiving proper pay for training others; and/or (vii) prohibited from receiving pay for mandated company meeting and events;

  ii.  Whether Defendants failed to pay Plaintiffs and the members of the Class the applicable minimum wage for all hours worked;

  iii.  Whether Defendants failed to pay Plaintiffs and the members of the Class all overtime compensation due to them for all hours worked in excess of forty (40) hours per week;

  iv.  Whether Defendants failed to pay Plaintiffs and the members of the Class the proper wages for time spent performing duties unrelated and not incidental to their occupation;

  v.  The correct statutes of limitations for Plaintiffs' claims and the claims of the members of the Class;

  vi.  Whether Plaintiffs and the members of the Class are entitled to damages, including but not limited to liquidated damages, and the measure of damages;

  vii.  Whether Plaintiffs and the members of the Class have been or are in danger of being subjected to retaliation for pursuing their claims; and

  viii.  Whether Defendants are liable for attorneys' fees and costs.

103.  Plaintiffs will fairly and adequately protect the interests of the Class as their interests are aligned with those of the members of the Class. Plaintiffs have no interests adverse to the Class, and Plaintiffs have retained competent counsel who is experienced in class action litigation.

104.  The collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Class are relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to

them.

105. Plaintiffs and the other members of the Class have suffered and will continue to suffer irreparable damage from the unlawful policies and practices implemented by Defendants.

### FIRST CLAIM FOR RELIEF

### Violation of Fair Labor Standards Act, 29 U.S.C. § 201, *et. sec.* ("FLSA")

### By Plaintiffs and the Collective Class against Defendants

106. Plaintiffs, on behalf of themselves and the Class, repeat and reallege each and every paragraph above as though they were fully set forth at length herein.

107. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

108. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Class members within the meaning of the FLSA.

109. At all relevant times, Defendants had a uniform policy and practice of willfully refusing to pay employees for all hours worked.

110. As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the members of the Class, the applicable federal minimum wage for all hours worked, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq*.

111. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Because of Defendants' willful conduct, a three year statute of limitations applies pursuant to 29 U.S.C. § 255(a).

112. At all relevant times, Defendants had a uniform policy and practice of willfully refusing to pay employees appropriate overtime compensation for all hours worked in excess of forty (40) hours per work week by Plaintiffs and each of the Class members.

113. As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the members of the Class, overtime pay for all hours worked at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per work week, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§

201, *et seq*.

114.  Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Class request that this Court grant the following relief against Defendants:

A.  Designation of this action as a collective action on behalf of the Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216 apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents pursuant to 29 U.S.C. § 216(b);

B.  For an order appointing Plaintiffs as the Representatives of the Class and counsel of record as Class Counsel;

C.  For an award of compensation for unpaid wages, unpaid compensation for overtime, and unpaid minimum wage to Plaintiffs and the members of the Class;

D.  For liquidated damages pursuant to 29 U.S.C. § 216(b);

E.  For an award of pre-judgment and post-judgment interest to Plaintiffs and the members of the Class;

F.  For an award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Class; and

G.  For such other and further relief as this Court deems just and proper.

///

///

///

///

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

DATED this 4th day of October, 2013.

**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**

By:   */s/ Don Spirngmeyer, Esq.*
  Don Springmeyer, Esq.
  Nevada State Bar No. 1021
  Justin C. Jones, Esq.
  Nevada State Bar No. 8519
  Bradley Schrager, Esq.
  Nevada State Bar No. 10217
  3556 E. Russell Road, Second Floor
  Las Vegas, Nevada 89120

  Timothy J. Becker, Esq. (pro hac to be applied for)
  Jacob Rusch, Esq. (pro hac to be applied for)
  JOHNSON BECKER, PLLC
  33 South Sixth Street, Suite 4530
  Minneapolis, Minnesota 55402

  Jason J. Thompson, Esq. (pro hac to be applied for)
  Jesse Young, Esq. (pro hac to be applied for)
  SOMMERS SCHWARTZ, P.C.
  2000 Town Center, Suite 900
  Southfield, Michigan 48075

  *Attorneys for Plaintiffs*