# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Brooke Cardoza et al.,

    Plaintiffs

    v.

Bloomin' Brands, Inc., et al.,

    Defendants

Case No. 2:13-cv-01820-JAD-NJK

**Order Granting in Part and Denying in Part Motion to Dismiss [Doc. 41] and Granting Motion to Strike [Doc. 42]**

This is a collective action and putative multi-state class action by Outback Steakhouse Restaurant employees who allege their employer refused to pay wages for required off-the-clock work, overtime, and minimum required wages to many thousands of minimum-wage employees, violating the Fair Labor Standards Act (FLSA) and various state employment laws.[1] Defendants move to dismiss all claims under FRCP 12(b)(6) as insufficiently pled and for lack of commonality, and they argue that plaintiffs' claims for violation of Nevada's wage laws are unsustainable because no private right to enforce these statutes exists.[2] They also ask the court to strike allegations about defendants' treatment of nursing mothers under FRCP 12(f).[3] I find these motions appropriate for disposition without oral argument under Local Rule 78-2, grant the motion to dismiss the Nevada

---

[1] Doc. 23.

[2] Doc. 41.

[3] Doc. 42.

state law claims as pled but with leave to amend, strike the nursing-mother allegations as impertinent, and deny the motion in all other respects.

**Discussion**

**A.     Motion to Dismiss**

Defendants offer three arguments for dismissal. They contend that plaintiffs cannot state a viable claim for violations of Nevada's wage laws NRS 608.016 and 608.018 because the right to enforce these statutes rests exclusively with the Labor Commissioner; there is no private right to judicially enforce them. They argue that plaintiffs' allegations are based on nothing more than conclusory statements that lack the factual specificity required to state a plausible claim under *Iqbal* and *Twombly*. Finally, they contend that plaintiffs' failure to allege any written corporate policy of wage-and-hour violations prevents plaintiffs from demonstrating commonality and requires the dismissal of all claims. Although I agree that plaintiffs have no right to privately enforce NRS 608.016 and 608.018 and I dismiss those claims, I do so with leave to amend to reframe those claims as contemplated by NRS 608.140. I find that the remaining claims are sufficiently pled to survive 12(b)(6) dismissal.

   *1.     Plaintiffs' Claims for Violation of Nevada's Wage Statutes*

Plaintiffs' third claim for relief seeks redress for a "violation of NRS 608.016 and 608.140" and alleges that defendants "have failed to pay Nevada Plaintiffs and Nevada Class members for all hours worked in violation of NRS 608.016 and 608.140."[4] Their fourth claim is similarly structured and alleges that defendants "failed to pay Nevada Plaintiffs and Nevada class members daily and weekly overtime premium pay for all hours worked over" 8 hours each day or 40 hours per week "in violation of 608.018 and NRS 608.140."[5] As plaintiffs recognize, neither NRS 608.016 nor 608.018

---

[4] Doc. 23 at 28 ¶ 158.

[5] *Id*. at 29 ¶ 163.

expressly creates a private right of action for the enforcement of these statutory provisions.[6] Thus, plaintiffs attempt to bootstrap a private right to enforce these statutes through NRS 608.140, which the Nevada Supreme Court acknowledged in *Baldonado v. Wynn*[7] "expressly recognize[s] a civil enforcement action to recoup unpaid wages."  I find that NRS 608.140 does not create a vehicle for privately enforcing the legal rights conferred by NRS 608.016 and 608.018, it merely establishes a fee-shifting mechanism in an employee's "suit for wages earned and due according to the terms of his or her employment."[8]  Thus, plaintiffs have no claim for a violation of NRS 608.016, 608.018, or 608.140, but they may recover unpaid wages—including overtime pay—under Nevada law if they can truthfully plead that those sums were earned and due according to the terms of their employment.

> **a.     NRS 608.140 is a fee-shifting statute; it does not create a private right of action for violation of any Nevada Labor Code provision.**

Defendants argue that NRS 608.140 does not give plaintiffs a vehicle to enforce NRS 608.016 or 608.018; enforcement of these laws is vested exclusively in the Labor Commissioner,[9] and plaintiffs' claims for violation of these statutory provisions must be dismissed.  Plaintiffs urge the court to find that NRS 608.140 recognizes a "broad" private right of action for unpaid wages of all types, specifically including those they seek to recover under their third and fourth claims for relief.[10]  Defendants contend that plaintiffs are extending NRS 608.140 beyond its express terms because 608.140 recognizes only a Nevada plaintiff's right to bring a claim for breach of an employment agreement, nothing more.[11]

---

[6] Doc. 61 at 13-16 (explaining that plaintiffs seek to pursue their claims for unpaid overtime and other wages under Nev. Rev. Stat. § 608.140).

[7] 194 P.3d 96, 104 n.33 (2008).

[8] Nev. Rev. Stat. § 608.140.

[9] Nev. Rev. Stat. § 608.180; *Baldonado*, 194 P.3d at 104.

[10] Doc. 61 at 16.

[11] Doc. 80 at 10.

My task "is to interpret the statute [the Nevada Legislature] has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."[12] The first step in interpreting this statute is to determine whether its language has a plain and unambiguous meaning in the context of this case.[13] Thus, I start with the statutory text.

NRS 608.140 states:

> Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit.[14]

This statute contains no language that creates a private right to enforce any legislatively created employment right; nor does it acknowledge an employee's right to bring a suit to enforce any employment statute. NRS 608.140's plain language merely creates a fee-shifting mechanism to recover attorney fees in an employee's "suit for wages earned and due according to the terms of his or her employment."

This characterization is also supported by the statute's legislative history. "Nevada follows the American rule that attorney fees may not be awarded absent a statute, rule, or contract authorizing such award."[15] When NRS 608.140 was first enacted in 1925, it was described simply as "[a]n Act authorizing the allowance of a reasonable attorney fee to plaintiff in an action for the

---

[12] *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

[13] *Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

[14] Nev. Rev. Stat. § 608.140.

[15] *Thomas v. City of N. Las Vegas*, 127 P.3d 1057, 1063 (Nev. 2006).

recovery of salary or wages, under certain conditions."[16]  Thus, NRS 608.140 did not create a private right of action for unpaid wages, it just authorizes the recovery of attorney fees in a suit for the recovery of wages due under the terms of employment.

A secondary effect of the statute—as the Nevada Supreme Court stated in dicta in a *Baldonado* footnote—is that it "recognize[s] a civil enforcement action to recoup unpaid wages."[17]  It was logical for the *Baldonado* court to frame the issue this way because the right to sue for unpaid wages existed in Nevada before NRS 608.140 was enacted.[18]  Thus, NRS 608.140 does not *create* a cause of action to recoup wages,[19] and it is not a vehicle for the private enforcement of NRS 608.016, 608.018, or any other provision of Nevada's Labor Code in a lawsuit.[20]  The right to seek

---

[16]  Nev. Sen. J., 1925 sess, 170 (1925) *available at* http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/pre1965/SB125,1925.pdf.  NRS 608.140 is not entirely dissimilar to Nevada's offer-of-judgment provisions.  *See, e.g.,* Nev. Rev. Stat. § 17.115; Nev. R. Civ. Proc. 68; *see also Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1029 (Nev. 2006) (noting that Nevada's offer-of-judgment provisions are designed "to save time and money for the court system, the parties, and the taxpayer by rewarding the party who makes a reasonable offer and punishing the party who refuses to accept such an offer").

[17] *Baldonado*, 194 P.2d at 705 n.33.

[18] *See, e.g.*, *Walser v. Moran*, 173 P. 1149 (Nev. 1918) (allowing claim for breach of employment contract); *Siebert v. Smith*, 239 F. 396 (Nev. 1925) (recognizing viability of claim wages in equity).

[19] The Ninth Circuit's statement in *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 532 (2013), that the statute "does *provide* a private right of action to recoup unpaid wages" is dicta, and I find it inconsequential to this discussion. (Emphasis added).  The panel cites only to *Baldonado* for this proposition, and neither *Baldonado* nor the statute's plain language and legislative history support the characterization of this provision as one that "provide[s]" a private right of action rather than recognizes one exists.  *See The New Oxford American Dictionary* 1364 (2d ed. 2005) (defining "provide" to mean "supply" or "equip or supply someone with").

[20]  This conclusion does not minimize the seriousness of the allegations in the complaint, but not all rights can be redressed by a lawsuit.  Plaintiffs may pursue their statutory-violation allegations with the Labor Commissioner.  *See* Nev. Rev. Stat. § 607.160 et seq.; Nev. Rev. Stat. § 608.180; *Baldonado*, 194 P.3d at 104 ("the labor statutes . . . require the Labor Commissioner to hear and decide complaints seeking enforcement of the labor laws"; the Labor Commissioner is charged with knowing and enforcing the labor laws; these responsibilities acknowledge a special expertise as to those laws" and "[i]mplicit in the Labor Commissioner's obligation to know and enforce the labor

1  unpaid wages earned and due according to the terms of employment predated and exists completely
2  independent of NRS 608.140.  The salient question, then, is whether plaintiffs have pled a claim for
3  wages earned and due according to the terms of their employment.

### b. *Plaintiffs' third and fourth claims for relief fail to state a cognizable claim for recovery under Nevada law.*

Plaintiffs' third and fourth claims for relief are founded on rights conferred by statute, not by a term of employment.[21]  The complaint makes it clear that these claims are based entirely on "violation[s]" of NRS 608.016, 608.018, and 608.140, not based on wages due and owing under the terms of the plaintiffs' employment.  Plaintiffs urge the Court to read "the private right expressed in NRS 608.140" to extend beyond the contractual terms of an employment relationship to include statutory-based obligations "for unpaid overtime under NRS 608.018."[22]  To adopt plaintiffs' interpretation of the scope of this private right of action, I must ignore the phrase "according to the terms of his or her employment" and read NRS 608.140 to recognize a claim "for wages earned and due" based on any theory, which necessarily includes statutorily created wage obligations.  The Nevada Supreme Court has long cautioned that "no part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided,"[23] and I am duty-bound to give effect to all words in the statute, not just the ones that plaintiffs prefer.  The phrase "terms of employment" plainly suggests a point of agreement between an employer and

---

laws is the duty to hear and resolve labor law complaints.").

[21] *See* Doc. 23 at 28-29 ¶¶ 156-164.

[22] Doc. 61 at 16.

[23] *Speer v. State*, 5 P.3d 1063, 1064 (2000) (quoting *Paramount Ins. v. Rayson & Smitley*, 472 P.2d 530, 533 (Nev. 1970)). To read *statutorily* imposed legal duties into every employment relationship would create a private right of action for violation of every section of Chapter 608, rendering nugatory NRS 608.180, which vests the Labor Commissioner with the power to enforce these statutes and to direct the district attorneys, Attorney General, special counsel, and the Deputy Labor Commissioner to prosecute actions for enforcement of these statutory provisions. *See* Nev. Rev. Stat. § 608.180.

employee, not a legislatively created, statutory requirement.[24]  To plead the type of claim recognized by NRS 608.140, plaintiffs must allege a failure to pay agreed-upon wages.  As "wages" are broadly defined by Nevada's Labor Code to include "[t]he amount which an employer *agrees to pay an employee* for the time the employee has worked, computed in proportion to time" plus commissions owed, and the definition excludes only bonuses and profit sharing,[25] the wages sought could conceivably include overtime pay if it has been earned and is due under the employee's terms of employment.

Plaintiffs have not alleged facts to suggest that the wages and overtime pay sought in their third and fourth claims for relief are earned and due under their terms of employment.  Thus, they have not stated a plausible Nevada state-law claim to recoup unpaid wages.  Plaintiffs' third and fourth claims for relief are dismissed.

### c.   **Leave to amend**

When the court grants a motion to dismiss, it must then decide whether to grant leave to amend.[26]  Courts should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or]

---

[24] *See, e.g., Black's Law Dictionary* 1608 (9th ed. 2009) (defining "term" to include "[a] contractual stipulation").  This is not to suggest that all employment relationships in Nevada are governed by a contract or that terms of employment will always be reduced to writing.  "Employees in Nevada are presumed to be employed 'at-will' unless the employee can prove facts legally sufficient to show a contrary agreement was in effect." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 884 (Nev. 1999).  As the Nevada Supreme Court recognized in *American Bank Stationery v. Farmer*, 799 P.2d 1100, 1102 (1990), "employers and employees are free to contractually change an employee's at-will status by either a written or oral agreement."

[25] Nev. Rev. Stat. § 608.012 (emphasis added).

[26] *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.")

futility of the amendment."[27]  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment.[28]

To the extent that plaintiffs can truthfully allege agreed-upon terms of employment that entitle them to pay for each hour they worked, an increased rate for hours worked over some threshold, or some other amount, they should be permitted leave to amend their complaint to plead a single claim for these amounts.  That claim may include a prayer for attorney fees under NRS 608.140.[29]  Accordingly, plaintiffs shall have 20 days to file a second amended complaint that replaces their current third and fourth claims for relief with a single claim for recoupment of wages earned and due according to the terms of plaintiffs' employment if plaintiffs can truthfully allege facts to support such a claim.

### 2. *Plaintiffs' Remaining Claims*

Defendants argue that all of plaintiffs' other claims must be dismissed because they lack the factual specificity required by the United States Supreme Court's decisions in *Bell v. Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.  They judge plaintiffs' FLSA claims and state-law claims to be insufficient because they lack allegations about specific "wage rates, average hours worked per week, dates" worked without pay and "the frequency of such occurrences."[30]  They also contend that plaintiffs' "class claims" should be dismissed because they lack allegations of a uniform policy necessary to establish commonality.[31]  I disagree.

#### a. **Pleading under the <u>Iqbal</u>-<u>Twombly</u> plausibility standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

---

[27] Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[28] *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

[29] This assumes, of course, that the required pre-filing demand was made.  *See* Nev. Rev. Stat. § 608.140.

[30] Doc. 41 at 13.

[31] *Id*. at 17.

as true, to state a claim for relief that is plausible on its face."[32]  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."[33]  A district court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[34]  To state a "plausible" claim for relief, the plaintiff must "plead[ ] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[35]  This requires a plaintiff to state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations charged.[36]

### b. *Plaintiffs' FLSA and state-law claims are sufficiently pled to survive dismissal.*

Defendants argue that plaintiffs' claims contain only a formulaic recitation of the elements of these claims and lack the factual specificity required by *Iqbal* and *Twombly*.[37]  Relying on extra-jurisdictional authority, defendants posit that plaintiffs are required to allege "wage rates, average hours worked per week, dates they were required to work without pay, and the frequency of such occurrences," and the absence of these specific allegations dooms these claims.[38]  To require plaintiffs to allege the details defendants demand would essentially impose a heightened pleading standard akin to FRCP 9, which requires plaintiffs to plead certain claims, elements, and allegations

---

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[33] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[34] *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[35] *Iqbal*, 556 U.S. at 678–79.

[36] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

[37] Doc. 41 at 5.

[38] Doc. 41 at 5-7.

"with particularity."[39]  I decline to impose such a standard.

Even defendants' own proffered authority only requires plaintiffs to allege "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours."[40]  Plaintiffs have done so; their complaint alleges that "[a]t least once during the past three years, [plaintiffs have] worked for Defendants more than forty (40) hours in a week without receiving premium overtime pay, and thus [have] worked unpaid compensable time"[41] and "[a]t least once during the past three years, [plaintiffs were] paid at the minimum wage rate per hour, and yet had worked unpaid compensable time."[42]  Plaintiffs include several other supporting allegations that make these claims plausible.  For example: plaintiffs allege they were:

> i. Required to appear and perform work prior to and to remain after scheduled shifts (referred to as "Outback Time") but prohibited from clocking in or remaining clocked in during Outback Time; and/or
>
> ii. Required not to clock in for the full amount of hours they worked and thus were not paid for the hours they worked; and/or
>
> iii. Made to clock out but continue working if they neared weekly or daily overtime thresholds; and/or
>
> iv. Not paid, even at the minimum wage level, for time worked off the clock or for compensable activity; and/or
>
> v. Prohibited from receiving pay for mandated training and testing; and/or
>
> vi. Prohibited from receiving pay for attending mandated company meetings and for promotional events.[43]

Taking these allegations as true and drawing reasonable inferences from these allegations,

---

[39] *Vess v. CibaGeigy Corp.*, USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (holding that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged).

[40] *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d. Cir. 2013).

[41] Doc. 23 at ¶¶ 13-23.

[42] Doc. 23 at ¶¶ 11-13, 15-24.

[43] Doc. 23 at ¶ 41.

plaintiffs have adequately stated claims under the FLSA for minimum-wage and overtime-wage violations, and defendants have not demonstrated that plaintiffs' state-law wage claims are fatally deficient on these allegations. The motion to dismiss plaintiffs' claims as insufficiently pled is denied.

### c. Plaintiffs' class-action allegations

Defendants cite to *Wal-Mart Stores, Inc. v. Dukes*[44] to argue that plaintiffs' class action "claims" should be dismissed because they have failed to allege a corporate policy of wage-and-hour violations necessary to demonstrate commonality to maintain these claims as a class action under FRCP 23.[45] Defendants' reliance on *Dukes* is misplaced. *Dukes* does not stand for the proposition that there must be a written corporate policy dictating or condoning the alleged violations in order to maintain a class action.[46] *Dukes* held that "statistical evidence consist[ing] primarily of regression analyses" coupled with comparisons of "work-force data" were insufficient to demonstrate commonality.[47] At best, *Dukes* can only be read to require plaintiffs to demonstrate "some common direction" by something more than "statistical and anecdotal evidence."[48] The absence of an official-policy allegation does not dictate the dismissal of any portion of this lawsuit.

Moreover, the procedural posture of *Duke* renders it inapposite to this motion. *Dukes* was decided on appeal from a class-certification order,[49] not a motion to dismiss. Even assuming *arguendo* that *Dukes* would require evidence of a corporate policy to establish commonality, the

---

[44] 131 S. Ct. 2541 (2011).

[45] Doc. 41 at 8-9; Doc. 80 at 6.

[46] *Dukes*, 131 S. Ct. at 2555.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 2546.

absence of that evidence at the motion-to-dismiss stage does not warrant dismissal.[50] The motion to dismiss plaintiffs' remaining claims for lack of commonality is denied.

**B.     Motion to Strike**

Finally, defendants ask the court to strike from the complaint paragraph 44, which alleges:

> In the case of nursing mothers, Defendants have refused to provide and make available the clean, private space and opportunity to express breast milk, as mandated by the FLSA, often forcing nursing mothers to express milk hurriedly in public restroom stalls on bathroom visits.[51]

Defendants argue that this allegation is immaterial to plaintiffs' minimum-wage, unpaid-wages, and overtime claims. Plaintiffs oppose the motion to strike arguing that "it demonstrates the propensity of [their employer] to violate the terms and provisions of the [FLSA]" and that "there is no requirement that every allegation in a complaint be the basis for a claim for relief."[52]

Rule 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ."[53] Matter is "immaterial" if it has no bearing on the controversy before the court[54] or "has no essential or important relationship to the claim for relief or the defenses being plead."[55] Allegations are "impertinent" if they are not responsive to the issues that arise in the action

---

[50] Defendants' arguments in this regard are premature and better suited for the class-certification stage.

[51] Doc. 23 at 12.

[52] Doc. 66 at 3.

[53] *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration omitted), rev'd on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

[54] *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

[55] *Fantasy, Inc.*, 984 F.2d 1527 (quoting 5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Pro.* § 1382, at 706–07 (1990) (quotation marks omitted)).

and that are admissible as evidence,[56] or "consist[] of statements that do not pertain, and are not necessary, to the issues in question."[57]

I strike paragraph 44 of the complaint because it is immaterial and impertinent. Each of plaintiffs' claims relates to minimum-wage violations, overtime-wage violations, and the alleged failure to pay all wages due.[58] Whether defendants failed to provide a clean and private space to express breast milk simply has no bearing on whether they properly paid their employees. Paragraph 44 is quintessentially impertinent and immaterial, and it will be stricken under FRCP 12(f). If plaintiffs file a second amended complaint to reframe their third and fourth claims for relief as permitted *supra*, they are cautioned that the allegations in stricken paragraph 44 shall not be included in the new pleading.

**Conclusion**

Accordingly, and with good cause appearing,

It is HEREBY ORDERED that **Defendants' Motion to Dismiss [Doc. 41] is GRANTED in part and DENIED in part.**

- Plaintiffs' third and fourth claims are dismissed with prejudice. Plaintiffs shall have 20 days to file a second amended complaint that replaces their current third and fourth claims for relief with a single claim for recoupment of wages earned and due according to the terms of plaintiffs' employment, assuming that plaintiffs can truthfully allege facts to support such a claim;
- The motion to dismiss is denied in all other respects.

. . .

---

[56] *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. at 965.

[57] *Fantasy, Inc.*, 984 F.2d 1527 (quoting 5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Pro.* § 1382, at 706–07 (1990) (quotation marks and citation omitted)).

[58] Doc. 23.

It is FURTHER ORDERED that **Defendants' Motion to Strike [Doc. 42] is GRANTED. The Clerk of Court is instructed to strike paragraph 44 [Doc. 23 at 12]** from the amended complaint.

DATED July 30, 2014.

_____
Jennifer A. Dorsey
United States District Judge