1   **UNITED STATES DISTRICT COURT**

2   **DISTRICT OF NEVADA**

3

4   Brooke Cardoza et al.,

5       Plaintiffs

6       v.

7   Bloomin' Brands Inc., et al.,

8       Defendants

9

Case No.: 13-cv-1820-JAD-NJK

**Order Granting in Part and Denying in Part Motion for Conditional Certification of Collective Action, Approval of Class Notice, Appointment of Interim Class Counsel, and Related Relief**

10

11   Plaintiffs bring Fair Labor Standards Act ("FLSA") claims for alleged minimum-wage and

12   overtime violations on behalf of themselves and similarly situated employees at corporate-owned

13   (non-franchised) Outback Steakhouse restaurants in the United States.  Plaintiffs move for

14   conditional certification of this action as a collective action, for approval of their proposed class

15   notice of this collective action, for appointment of plaintiffs' counsel as interim class counsel, and

16   for sundry related relief.  Having thoughtfully considered the papers, the parties' arguments at the

17   October 16, 2014, hearing on the motion, and the relevant law, I conditionally certify this as a

18   collective action, appoint plaintiffs' counsel as interim counsel for the similarly situated plaintiffs,

19   and approve the attached notice and consent-to-sue form for the reasons set forth below.[1]

20   **Discussion**

21   This order resolves plaintiff's conditional-certification motion and defendants' objections to

22   the proposed class notice and consent form that were argued during the October 16 motion hearing.[2]

23

24       [1] The court will send the electronic version of the notice and consent to sue, as contained in Appendices A and B, to plaintiffs' counsel for preparation of the notices.

25       [2] In opposing the conditional-certification motion, defendants ask me to judicially notice two

26   Facebook printouts, a PRNewswire press-release printout, a printout from Wolf Rifkin Shapiro's website, and a news article from SunbeltFoodService.com. Doc. 135 at 2–3. The first four submissions

27   support defendants' arguments regarding alleged conflicts between an employee's declarations. *Id.* And defendants contend that the article "underscores the fact that Plaintiffs do not purport to rely on any written corporate policy or directive." *Id.*  I cannot weigh evidence on a motion for conditional

28

1

1    I begin with conditional certification.

2    **I.      Motion for Conditional Certification (Doc. 38)**

3            The FLSA gives employees the right to sue their employer when they are not fairly

4    compensated for their work.[3]   Employees may sue individually or as part of a collective action under

5    29 U.S.C. § 216(b) on behalf of themselves and other similarly situated employees.[4]   Whether to

6    permit a collective action under the FLSA is within the court's discretion, and neither the Supreme

7    Court nor the Ninth Circuit has defined "similarly situated."[5]   I follow the courts in this circuit by

8    considering certification[6] in two stages.[7]

9            In the first stage, courts determine whether the potential class should receive notice of the

10   suit.[8]   Conditional certification "require[s] little more than substantial allegations, supported by

11   declarations or discovery, that the putative class members were together the victims of a single

---

certification, so I cannot even consider any conflict between declarations at this stage.  And even if the
plaintiffs do not rely on a written corporate policy, I still find they are similarly situated for purposes of
this motion.  Because the evidence that the defendants ask me to judicially notice is irrelevant at this
stage, I deny their request.

   [3] *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor
Transport. Co. v. Missel*, 316 U.S. 572, 578 (1942) (internal quotation marks omitted) (quoting a
message by President Roosevelt); *see also* 29 U.S.C. § 206–07 (providing an employee with a right to
sue against her employer when the employer fails to pay minimum wage or overtime wages).

   [4] *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citing 29 U.S.C. §
216(b)); *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000)) (citation omitted).

   [5] *Id.* (citation omitted); *Small v. Univ. Medical Ctr. of S. Nev.*, 2013 WL 3042454, 2:13-cv-298-
APG-PAL, at *1 (D. Nev. June 14, 2013).

   [6] For purposes of this order, I use the terms "class" and "certification" in a colloquial sense, as
the point at this stage is to approve the sending of a notice of a collective action to similarly situated
employees, and no "class" is being certified under Rule 23.  *See Morgan v. Family Dollar Stores, Inc.*,
551 F.3d 1233, 1259 (11th Cir. 2008) (noting that "certification" of a collective action is a device to
facilitate notice to potential class members and does not actually "create a class of plaintiffs" for a FLSA
collective action).  "'Certification' is neither necessary nor sufficient for the existence of a representative
action under FLSA, but may be a useful 'case management' tool for district courts to employ in
'appropriate cases.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (quoting *Hoffmann-La
Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

   [7] *Leuthold*, 224 F.R.D. at 466–67.

   [8] *Id.* (writing that conditional certification is "based primarily on the pleadings and any affidavits
submitted by the parties.").

decision, policy, or plan."[9]  "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."[10]  It is inappropriate to weigh the merits of underlying claims now; instead, the issue is "whether potential opt-in plaintiffs may be similarly situated."[11]  Because courts generally have limited evidence at this initial stage, the standard is lenient and it typically results in conditional certification.[12]

Plaintiffs argue that conditional certification is appropriate because "[e]ach declarant and named Plaintiff . . . states that he or she is an hourly employee of Outback, and that he or she has been made to work off the clock, uncompensated, by Defendants."[13]  To support conditional certification, the plaintiffs proffer 43 declarations from individuals who are or were employed by corporate-owned Outback Steakhouse restaurants in 14 different states from Nevada to Massachusetts.[14]  They also represent that more than 175 current or former employees have filed consents to sue after hearing about this litigation.[15]

Defendants deny that these employees are similarly situated and urge that, given the geographic spread represented in this potential class, the potential class members are too diverse to

---

[9] *Benedict v. Hewlett-Packard Co.*, 13-CV-00119-LHK, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014) (quoting *Villa v. United Site Services of Cal.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *see also Morton v. Valley Farm Transport, Inc.*, C-06-2933-SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007)) (internal quotation marks omitted); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.  2001).

[10] *Id.*; *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted).

[11] *Id.* at 368–69 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y.2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated.")); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here.")).

[12] *Leuthold*, 224 F.R.D. at 467 (citations omitted).

[13] Doc. 38 at 9.

[14] Doc. 148 at 4.

[15] Doc. 38 at 3.

3

be conditionally certified.[16]  Defendants argue that there is no national plan or policy, largely because the wage-and-hour violations described in plaintiff's declarations conflict with Outback's written policy.[17]  They claim that the employees may have had different experiences depending on whether they held jobs as host, server, bartender, cook, or management.  They further contend that plaintiffs' declarations lack "key details" about how violations occurred, ranging from details about "the hours worked and wages actually paid to them during any week where there was an alleged violation" to "who required them to attend" unpaid meetings.[18]  And the defendants submit their own set of well over 100 declarations from current Outback employees who attest that no policy violations have occurred.

Applying the lenient standard for conditional certification and recognizing that only a modest showing is required at this preliminary stage,[19] I find that conditional certification of claims on behalf of all current and former hourly employees of Bloomin' Brands, Inc.; OSI Restaurant Partners, LLC; Outback Steakhouse of Florida, LLC; and OS Restaurant Services, LLC ("the Outback Defendants") who are or were employed at an Outback Steakhouse restaurant within the past three years is warranted.  Plaintiffs have provided sufficient evidence to support a finding that these individuals are similarly situated.  Forty-two declarants in 14 states attest that they worked unpaid hours.[20]  Twenty-six declarants in 10 states represent that they work unpaid events.[21]  Thirty-nine declarants in 12 states attest that they were required to attend meetings and complete training without pay.[22]  And forty-two declarants in 14 states believe their co-employees faced similar wage-and-hour

---

[16] *See, e.g.*, Doc. 132 at 11; *see also* Doc. 150 (oral arguments).

[17] *See, e.g.*, Doc. 132 at 9.

[18] *See, e.g.*, *id.* at 26, 29, 31, 33.

[19] *Leuthold*, 224 F.R.D. at 467 (citations omitted).

[20] *See id.*

[21] *See id.*

[22] *See id.*

1    violations.[23]  These averments suggest at this preliminary stage that the plaintiffs were subject to a

2    company-wide pattern, plan, or practice of the FLSA violations alleged in the complaint.

3        **A.     Geographic Scope of the Collective Action**

4        Defendants argue that plaintiffs have not demonstrated that their collective action has a

5    nationwide scope and that the court should geographically limit the targets of the notice.  I disagree.

6    In geographic terms, the declarants who provided plaintiffs with declarations to support this motion

7    hail from 28 percent of the states in this country, or more than one in four states.  These bald figures,

8    however, understate the level of representation demonstrated by plaintiffs' evidence.  Defendants'

9    counsel acknowledged at oral argument that Outback Steakhouse has corporate-owned locations in

10   fewer than 40 states.  Thus, plaintiffs' declarants actually represent closer to 40 percent of the states

11   in which these employers operate.  And even the focus on this geographic commonality is

12   unnecessary.  Federal courts consistently hold that "[g]eographic commonality is not necessary to

13   meet the similarly situated requirement for a FLSA collective action; instead the focus is on whether

14   the employees were impacted by a common policy."[24]  Nevertheless, the declarations submitted by

15   plaintiffs suggest that the FLSA-violative practices alleged here are not geographically localized and

16   do not exist in a concentrated cluster that cautions a more geographically limited notice than the

17   nationwide notice that plaintiffs seek.  Accordingly, the notice shall be provided to qualifying

18   individuals in all states in which the Outback Defendants operate Outback Steakhouse restaurants.

19
20       **B.     Differences Among Positions and Job Descriptions Do Not Defeat Conditional
                    Certification**.

21       Defendants' objections that Outback employees working in different positions (e.g., as cook

22   vs. server, or hostess vs. bartender) may have been subject to different practices and procedures do

23   not compel denial of conditional certification of these claims on behalf of all hourly employees

24   _____

25       [23] *See id.*

26       [24] *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 863 (S.D. Tex. 2012) (citing *Vargas v.
     Richardson Trident Co.*, H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting
27   cases)) (internal quotation marks omitted).

28
                                                    5

1  regardless of their classification.  The declarations come from employees in a wide range of

2  positions, all of whom report similar treatment that renders them sufficiently similarly situated for

3  conditional certification.  If certification becomes appropriate at a later date, subclasses may also be

4  appropriate.  But the defense does not urge division of the class; it simply opposes any certification.

5  At this stage, however, the evidence contained in the declarations proffered by the plaintiffs supports

6  a finding of sufficient similarity and conditional certification of this collection action for notice

7  purposes.

8  **C.      Outback's Written Policy Does Not Prevent Conditional Certification.**

9       The possibility that the alleged FLSA violations also violate a written Outback Steakhouse

10 policy is no bar to conditional certification.  Written policies do not immunize defendants from

11 FLSA violations when there is evidence that they ignored those policies, as there is here.[25]  Nor does

12 the existence of a written policy suggest—particularly in the face of 42 declarations—that any

13 violations of this policy must have been anomalous incidents instigated by rogue managers.

14 **D.      Greater Factual Detail Is Not Required for Conditional Certification.**

15      Contrary to defendants' argument, at this stage, plaintiffs do not need to provide details of

16 how many hours were worked during a given week or who ordered an employee to work off-the-

17 clock in order for the court to accept the proffered declarations as evidence of substantial similarity.

18 I recognize that defendants offer more than 130 exhibits, many of which may present material issues

19

20      [25] *See, e.g., Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 408 (S.D.N.Y. 2012); *Burkhart-*
*Deal*, 07-1747, 2010 WL 457127 (W.D. Pa. Feb. 24, 2010), at *3 (concluding that "[t]he fact that

21 Defendant has a written policy requiring overtime pay . . . does not itself defeat conditional certification"
   and noting that such arguments "skirt the merits" and are inappropriate for resolution on motion for

22 conditional certification); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 06–0715 SC, 2008 WL 793838,
   at *4 (N.D. Cal. Mar. 24, 2008) ("An employer's responsibility under the FLSA extends beyond merely

23 promulgating rules to actually enforcing them . . . .  That Defendants published a handbook cannot
   immunize them against an FLSA violation where there is substantial evidence that they did not follow

24 their own guidelines."); *Levy v. Verizon Info. Servs.*, 06 CV 1583(NG)(SMG), 06 CV 5056 (NG)(SMG),
   2007 WL 1747104, at *2 (granting conditional certification despite argument that defendant's written

25 policy requiring payment of overtime meant that "any deviations from this provision . . . are at best
   isolated incidents, and do not implicate the company's overtime policy."); *Vennet v. Am. Intercontinental*

26 *Univ. Online*, Civ. 4889, 2005 WL 6215171, at *7–8 (N.D. Ill. Dec. 22, 2005) (rejecting argument that
   defendant's written policy requiring payment for all overtime necessarily meant that "any contrary

27 instruction from individual supervisors would have to be proven on an individualized basis and be based
   on anecdotal evidence").

28

of fact, but I am not deciding this on a summary-judgment standard or resolving factual disputes or weighing credibility at this stage. Based on the declarations that plaintiffs supply at this early stage in the litigation, I thus find enough similarity between the lead plaintiffs and proposed collective active group to authorize plaintiffs to send the notice of this collective action.

## II.      Form of Collective-Action Notice

When an FLSA collective action is conditionally certified, a district court may authorize the named plaintiffs to send notice to "all potential plaintiffs" and "may set a deadline for plaintiffs to join the suit by filing consents to sue."[26] Having determined at this initial certification phase that the current and former hourly employees of the Outback Defendants who are or were employed at an Outback Steakhouse restaurant within the past three years are sufficiently similarly situated to receive notice of this FLSA collective action, I next turn to the form of that notice and the consent-to-sue form, both of which have been proposed by plaintiffs.[27] In the course of the motion practice, the parties whittled down their disputes;[28] by the time of the October 16, 2014, hearing, about a dozen objections remained. I now resolve those objections.

### A.      Exclusion of Non-Franchise Locations

Defendant objects that the notice appears to be directed to all employees of Outback Steakhouse locations, not just those in corporate-owned (non-franchise) locations on whose behalf the claims alleged in this case were brought. Both sides agree this collective action is only on behalf of employees of corporate (i.e., non-franchise) locations. Those non-franchise locations are owned by the named defendants in this case as opposed to independent franchisees. To make this patently clear, the notice shall be directed to, and the putative class shall be defined as: All current and former hourly employees of Bloomin' Brands, Inc.; OSI Restaurant Partners, LLC; Outback Steakhouse of Florida, LLC; and OS Restaurant Services, LLC who are or were employed at an Outback

---

[26] *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (citation omitted); *see also Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989)).

[27] Plaintiffs have already made some changes to the proposed form notice as a result of arguments raised in defendants' opposition. I thus analyze the revised notice proposed at Doc. 149-1 of the docket.

[28] The most recent proposed notice drafts are found at Doc. 149-1 and Doc. 149-2.

Steakhouse restaurant within the past three years.  The attached approved notice and consent forms have been edited to reflect this change.

### B.    Plaintiffs' Counsel's Contingency-Fee Agreements

Defendants argue that plaintiffs' counsels' contingency-fee percentage should be stated in the class notice.  This percentage was disclosed in the consent-to-join form as part of the "Additional Terms & Information" that potential plaintiffs are consenting to by opting-in to this collective action.[29]  I agree that this information is better located in the notice itself.  The notice form, as revised by the court and attached as Appendix A, now contains this information in section 6; this information is not repeated in the consent form, but is instead incorporated by reference.

### C.    Length of the Opt-in Period

Defendants ask the court to set the deadline for returning consent-to-join forms at 60 days; plaintiffs ask for 90 days.  Because of the potential size of the putative class, and to permit recipients of the notice sufficient time to consider it and their options, I find that a 90-day return deadline is reasonable.[30]  This number is also consistent with the 60- to 90-day periods routinely approved in this circuit.[31]  The 90 days will begin running on the date that notice is mailed.

### D.    Online Pay-and-Hour Records

Plaintiffs ask the court to direct Outback Steakhouse to provide, on potential plaintiffs' requests, login information for the online wage-and-hour records.  This is a discovery issue, and it is premature for my present consideration.  Plaintiffs' declarants do not indicate that they need electronically stored information from their employer to determine if they were given sufficient minimum-wage or overtime pay or that they will require that information in order to assess whether to opt in to this collective action.  I therefore deny plaintiffs' request without prejudice and delete from the notice any procedure for requesting these records.

---

[29] Doc. 38-1 at 9.

[30] *See, e.g.*, *Benedict*, 2014 WL 587135, at *13, 15.

[31] *See id.* (gathering cases).

### E.   Contact Information for Defense Counsel

Defendants ask that their counsel's contact information be provided along with plaintiffs' counsel's contact information in the class notice.  They offer no authority for this request, and I do not find it necessary to include defense counsel's contact information in the notice.

### F.   The Need for a Short-Form Notice

Plaintiffs propose two forms of the notice: a full form to be mailed, and a short form to be posted at Outback Restaurant locations.  Defendants challenge the notion that any notice should be posted at the restaurants and also object to the short-form notice on the basis that it leaves out pertinent information.

I find no need for a short-form notice.  The best notice practicable in this case is by first-class mail, and posting a truncated version of the notice at the Outback Restaurants is unlikely to offer any appreciable benefit above and beyond a first-class mailing.  As the Outback Defendants pointed out at the hearing, the only potential class members who will see the posted notice are current employees, and they would be the potential class members for whom the Outback Defendants would most likely have current mailing addresses.  Even if I were of the opinion that notice should also be posted at the restaurants, it would not be a short-form notice because I believe that all of the information contained in the full-form notice is essential; if it were not, I would delete it.  I thus approve a single, full-form notice (Appendix A) and direct that it be sent by first-class mail to the last known addresses of the putative class members on a nationwide basis.

### G.   Service of Notice by Email

A similar issue arises with regard to plaintiffs' request for defendants to provide the putative class members' email addresses so that the notice can also be sent by email.  Although I recognize that email communications are now ubiquitous in this Information Age, the plaintiffs have not demonstrated that something more than first-class-mail notice is necessary here.  And plaintiffs' counsel conceded at oral argument that they do not even know whether the Outback Defendants are in possession of email addresses for these class members.  I thus deny the request for email addresses and supplemental service of the notice by email.

**H.    The Scope of the Contact Information**

Plaintiffs argue that, in order to effectuate service of the collective-action notices, they require full names, last known addresses, dates of birth, the last four digits of the employees' Social Security numbers, telephone numbers, and dates and locations of employment.  To justify this broad request, they offer little more than the question of "why not?"  I do not find that plaintiffs have demonstrated a need for all these categories of information *in order to prepare the notices*.  I reserve for another day the question of whether this information must be tendered in discovery.  Defendants are ordered to provide plaintiffs' counsel with the names and last-known addresses of all employees nationwide covered by the collective action within 60 days and in Microsoft Excel or compatible electronic format.[32]

**I.    Reminder Postcards**

Plaintiffs also request they be permitted to send a "reminder postcard" before the opt-in deadline arrives.  Defendants object.  Plaintiffs have not provided a draft of any such reminder postcard for me to consider, nor have they offered a compelling reason to authorize one.  I deny the request.

**J.    Electronic Signatures**

Additionally, plaintiffs seek the ability to obtain electronic signatures on consent-to-join forms.  I deny this request because plaintiffs have not demonstrated that the putative plaintiffs require this additional method for communicating their consent.  The putative plaintiffs' ability to return the opt-in form by mail, fax, and email should more than facilitate their communication of their intent to join this lawsuit.

**K.    "Court-Authorized" Title**

The parties disagree over whether the notice should be entitled a "court-authorized notice."

---

[32] Defendants ask that I protect this information from plaintiffs' counsel by directing that it be sent to a neutral third-party administrator rather than directly to plaintiffs' counsel. Defendants have not demonstrated a need for this, and I have no basis at this time to impose limitations on plaintiffs' counsels' communications with putative plaintiffs.  I presume they are professionals and officers of this court who recognize and perform their ethical obligations.

1    To resolve this disagreement, I rely on *Hoffmann-La Roche Inc. v. Sperling*, in which the Supreme

2    Court cautioned, "[i]n exercising the discretionary authority to oversee the notice-giving process,

3    courts must be scrupulous to respect judicial neutrality.  To that end, trial courts must take care to

4    avoid even the appearance of judicial endorsement of the merits of the action."[33]  I find that titling

5    the document a "court-authorized notice" creates the appearance of judicial endorsement of this

6    action instead of just the form of the notice; the notice shall be entitled, simply, "Notice of Your

7    Right to Join Lawsuit Seeking Unpaid Wages."[34]  And the note about judicial neutrality shall appear

8    on the first page of the notice, directly under the title and in bold font.[35]

9    **L.      Letterhead vs. Case Caption**

10   The parties disagree whether the notice should be sent on plaintiffs' counsel's letterhead or

11   the case caption.  I do not find that opening a notice with a case caption suggests judicial

12   endorsement; it merely indicates the pendency of a lawsuit, which this is.  I therefore find that the

13   notice should be sent with the case caption, not on law-firm letterhead.

14   **M.      The Consent-to-Sue Form**

15   At the motion hearing, defendants argued that the consent-to-sue form is vague.  They

16   contend that more language is needed to confirm putative plaintiffs' understandings of the lawsuit

17   and to confirm plaintiffs' agreement to representation by plaintiffs' counsel, including fees that may

18   come with this representation.[36]  These same objections are more thoroughly articulated in their

19   response to the motion.[37]  The revised consent-to-sue form, which I attach as Appendix B, provides

20   greater clarification of these points in substantial conformity with defendants' proposed edits.  And it

21   directly incorporates by reference portions of the notice that similarly reflect these proposed edits.[38]

22

23   [33] *Hoffmann-La Roche*, 493 U.S. at 174.

24   [34] *See* approved form of notice attached hereto as Appendix A.

25   [35] *See* Appendix A at 1.

26   [36] Doc. 136 at 7.

27   [37] *Id.*

28   [38] *See* Appendices A & B.

## III.   Appointment of Interim Counsel for the Collective-Action Group

The Wolf Rifkin Shapiro, Johnson Becker, and Simmer Schwartz law firms seek to be appointed as interim class counsel for the plaintiffs.[39]  "Although neither the federal rules nor the advisory committee notes expressly so state, it is generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."[40]  Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Under Rule 23(g)(1), courts must consider four factors when appointing counsel "[u]nless a statute provides otherwise."[41]  These four factors are:

> 1. the work counsel has done in identifying or investigating potential claims in the action;
>
> 2. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> 3. counsel's knowledge of the applicable law; and
>
> 4. the resources that counsel will commit to representing the class.[42]

Under the federal procedural rules, courts "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[43]

---

[39] Doc. 38 at 12.

[40] *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (gathering citations from around the country) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification.").

[41] *Cf. id.*

[42] *Id.*

[43] Fed. R. Civ. P. 23.  The defense objects to appointing these three plaintiffs' firms as interim counsel because "no other counsel is attempting to litigate the same or overlapping claims."  Doc. 132 at 35.  It also argues that, because plaintiffs obtained a discovery stay and "have yet to take any discovery whatsoever . . . Plaintiff's counsel has demonstrated unwillingness to 'vigorously prosecute' this case."  *Id.*  Finally, the defense argues that plaintiffs have characterized this case in ways that "were patently misleading to the public and to putative class members."  *Id.* at 36.  I do not respond to these objections in the main script because they are patently thin arguments, which seem to exist more for the sake of

1    I find each element satisfied here.  Based on the substantive work plaintiffs' counsel has

2    already invested in this case, their attested experience in handling class actions and complex civil

3    litigation, the knowledge of this legal area that they have already demonstrated in this case, and their

4    stated commitment to providing the necessary resources to represent the plaintiffs in this collective

5    action; and having considered defendants' objections, I find Wolf Rifkin Shapiro, Johnson Becker,

6    and Simmer Schwartz can fairly and adequately perform the role of interim class counsel for the

7    putative class in this conditionally certified FLSA action.

8    **IV.    A Reminder about the Local Rules**

9        In the District of Nevada, Local Rule 7-4 limits pretrial briefs to 30 pages and limits

10   responses and replies to 20 pages, unless leave for a lengthier brief is granted.  The Outback

11   Defendants' response—at 39 pages—is almost twice the permitted length.[44]  Counsel is cautioned

12   that future violations of the local page limitations may result in the striking and disregard of filed

13   documents.

14                                          **Conclusion**

15       Accordingly, and with good cause appearing,

16       It is hereby ORDERED that plaintiffs' motion for conditional certification of collective

17   action **[Doc. 38] is GRANTED in part and DENIED in part** consistent with this order;

18       IT IS FURTHER ORDERED that defendants' request for judicial notice **[Doc. 135] is**

19   **DENIED**;

20       IT IS FURTHER ORDERED that the Outback defendants shall provide plaintiffs' counsel

21   with the names and last-known addresses of all employees covered by the collective action within 60

22   days and in Microsoft Excel or compatible electronic format;

23       IT IS FURTHER ORDERED that plaintiffs shall serve, by first-class mail, the Notice of

24   Collective Action and Consent-to-Join forms attached hereto as Appendices A and B; and

25

26   making some objection than because the defense really believes they are grounds for refusing interim
     appointment to plaintiffs' law firms.

27

28       [44] Doc. 132.

                                              13

1    IT IS FURTHER ORDERED that the law firms of Wolf Rifkin Shapiro Schulman & Rabkin,

2   LLP; Johnson Becker PLLC; and Sommers Schwartz PC are appointed as interim class counsel.

3    DATED October 24, 2014.

_____
Jennifer A. Dorsey
United States District Judge

**Appendix A**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| BROOKE CARDOZA, et al.,<br><br>    Plaintiffs<br><br>    vs.<br><br>BLOOMIN' BRANDS, INC., a Delaware Corporation; OSI RESTAURANT PARTNERS, LLC, a Florida Limited Liability Company; OUTBACK STEAKHOUSE OF FLORIDA, LLC, a Florida Limited Liability Company; OS RESTAURANT SERVICES, LLC, a Florida Limited Liability Company; and DOES 5 through 100, Inclusive,<br><br>    Defendants | CASE NO.: 2:13-cv-01820-JAD-NJK |

## NOTICE OF YOUR RIGHT TO JOIN LAWSUIT SEEKING UNPAID WAGES

**To:**    **All current and former hourly employees of Bloomin' Brands, Inc.; OSI Restaurant Partners, LLC; Outback Steakhouse of Florida, LLC; and OS Restaurant Services, LLC who are or were employed at an Outback Steakhouse restaurant within the past three years**

**Note:**  **This notice is not an expression of any opinion by the court about the merits of any claims asserted by the Plaintiffs or defenses asserted by the Defendants as this is ongoing litigation in which those issues have not yet been decided.**

**1.**    **INTRODUCTION**

    The purpose of this notice is to inform you of the existence of a collective-action lawsuit against Bloomin' Brands, Inc.; OSI Restaurant Partners, LLC; Outback Steakhouse of Florida, LLC; and OS Restaurant Services, LLC (the "Outback Defendants") in which you may be able to make a claim for damages under the federal Fair Labor Standards Act ("FLSA"), to advise you of how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit.

**2.**    **WHAT THE LAWSUIT IS ABOUT**

    Plaintiffs, Brooke Cardoza (Nevada), Cody C. Hancock (Nevada), Michael Yendes (Nevada), Jeffery Brown (Illinois), Kevin Connelley (Kansas), Trevor Tullis (Kansas), Denise Goodlin (Maryland), Joseph Verrengia (New York), Amy Womack (New York), Valerie Gardner (North

Carolina), Alex Nesbitt (Ohio), Daniel Geiger (Florida), Rachel Talasko (Florida), and Wesley Miles (Virginia) (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, filed a lawsuit in the U.S. District Court for the District of Nevada against the Outback Defendants on October 4, 2013.

Plaintiffs are current and former hourly employees of Outback Defendants, who allege they were required to perform work off-the-clock and, therefore, were not paid minimum and/or overtime wages during all or part of their employment.

Plaintiffs allege they were made to arrive and work prior to the beginning of their work shift, but not allowed to clock in upon arrival; made to work after the end of their work shift and after clocking out; completed mandatory training sessions online without being paid for this time; worked promotional events and attended company or restaurant meetings without pay; and have not been paid premium overtime wages for working more than 40 hours in a given week.

Plaintiffs filed the lawsuit individually and on behalf of all other similarly-situated persons claiming that Outback Defendants violated their rights under the FLSA.  The lawsuit seeks back pay plus liquidated damages equal to the amount of unpaid minimum and/or overtime wages owed under the FLSA.  The lawsuit also asks that Outback Defendants be required to pay Plaintiffs' costs and attorneys' fees.

Outback Defendants deny that they violated the FLSA and claim that hourly employees of Outback Steakhouse restaurants were paid properly under the FLSA's minimum-wage and overtime provisions and other applicable laws.

## 3.  <u>ELIGIBILITY TO PARTICIPATE IN THE LAWSUIT</u>

This Notice is distributed to:

> **All current and former hourly employees of Bloomin' Brands, Inc.; OSI Restaurant Partners, LLC; Outback Steakhouse of Florida, LLC; and OS Restaurant Services, LLC who are or were employed at an Outback Steakhouse restaurant within the past three years**

If you meet this description and you believe that Outback Defendants have failed to compensate you for off-the-clock labor, training sessions, or company meetings and promotional events, and/or failed to compensate you properly for time worked above 40 hours in a week, you may have the right to make an FLSA claim against Outback Defendants in this lawsuit to recover unpaid wages, liquidated damages, costs, and attorneys' fees.  It is entirely your own decision whether to join this lawsuit.

## 4.  <u>EFFECT OF JOINING THIS CASE</u>

If you choose to join in this case, you will become a plaintiff in this lawsuit and you will be bound by any judgment, whether it is favorable or unfavorable.  This means that if you win, you may be eligible to share in the monetary award; if you lose, no money will be awarded and you will not be able to file another lawsuit regarding the matters raised in this lawsuit.

If you sign and return the enclosed Consent to Join Lawsuit form and are joined in the case, you are agreeing to designate Plaintiffs as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' Counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. These decisions made and entered into by the representative Plaintiffs will be binding on you if you join this lawsuit.

While this lawsuit is proceeding, you may be required to respond under oath to written questions, have your deposition taken, produce documents, and/or testify in court at a trial or hearing in the United State federal courthouse in Las Vegas, Nevada.

## 5.    NO LEGAL EFFECT FOR NOT JOINING THIS LAWSUIT

If you do not wish to be part of this lawsuit, you do not need to do anything.  If you do not join the lawsuit, you will not be part of the case in any way and you will not be bound by or affected by the result (whether favorable or unfavorable); in other words, if you do not file a Consent to Join Lawsuit form, you will not receive any unpaid minimum wage and/or overtime wages or other relief granted under this lawsuit if Plaintiffs prevail on their FLSA claims.

Your decision not to join this case will not affect your right to bring a similar case on your own. If you intend to bring your own action, you should be aware that the statute of limitations is running on your claims, which means you may be losing claims each week that you wait to bring them.

## 6.    YOUR LEGAL REPRESENTATION IF YOU JOIN THIS LAWSUIT

The attorneys for Plaintiffs and the proposed opt-in class of current and former Outback Defendants employees are the law firms of Wolf Rifkin Shapiro Schulman & Rabkin, LLP; Johnson Becker, PLLC; and Sommers Schwartz, PC (collectively, "Plaintiffs' Counsel") with the following contact information:

Wolf Rifkin Shapiro Schulman & Rabkin, LLP
3556 East Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200
Fax: (702) 341-5300
Email: outbacklawsuit@wrslawyers.com
http://www.wrslawyers.com/

Johnson Becker, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Phone: (800) 279-6386
Fax: (612) 436-1801
http://www.johnsonbecker.com/

Sommers Schwartz, PC
2000 Town Center, Suite 900
Southfield, Michigan 48075
Phone: (800) 783-0989
http://www.sommerspc.com/

By choosing to join this lawsuit, you agree that Plaintiffs' Counsel will be representing you unless you obtain other attorneys.  You will not be required to pay any attorneys' fees or court costs to

Plaintiffs' Counsel at this time; rather, Plaintiffs' Counsel are handling this matter on a contingency-fee basis and under contingency-fee agreements in which Plaintiffs have agreed to pay Plaintiffs' Counsel 33 1/3% of all sums recovered by settlement, arbitration award, or trial, and 40% of all sums recovered through post-trial, post-trial motions and appeals. These amounts will be calculated based on the total recovery and before deduction of any payments for costs, which would be deducted pro rata from any individual share of recovery. In the event the Plaintiffs prevail in this lawsuit by judgment, or if a settlement is reached, Plaintiffs' Counsel will be requesting that the court order Outback Defendants to pay the Plaintiffs' attorneys their reasonable attorneys' fees and reimburse them for any expenses. Plaintiffs' attorneys will seek to be compensated by the greater of either a contingency fee of all sums recovered by settlement, award, court-ordered attorney's fees, or judgment, <u>or</u> whatever attorneys fee is awarded by the court or obtained/negotiated through a settlement. Defendants have reserved their right to challenge the award of any fees and costs in this case. The court must approve any fee award to Plaintiffs' Counsel.

## 7.   <u>HOW TO JOIN THIS LAWSUIT</u>

If you wish to join this case, you must do so by completing and signing the enclosed Consent to Join Lawsuit form and returning it in one of the following three ways NO LATER THAN [INSERT DATE THAT IS 90 DAYS FROM MAILING]:

1)   Mailing the form in the enclosed pre-paid, addressed envelope; or

2)   Faxing it to Plaintiffs' counsel by at (702) 341-5300; or

3)   Emailing it to outbacklawsuit@wrslawyers.com.

You must return the Consent to Join Lawsuit form by the deadline above to preserve any legal right you may have to participate in this lawsuit. Until the Consent to Join Lawsuit form is filed with the court, the statute of limitations ordinarily continues to run on your individual claim for unpaid wages.

If you complete and timely return a Consent to Join Lawsuit form, your continued right to participate in this lawsuit may depend upon a later decision by the court that you and the Plaintiffs are similarly situated. If the court finds that you and the Plaintiffs are not similarly situated, you may re-file your own FLSA lawsuit within the time provided by law.

It is entirely your own decision whether or not to join this lawsuit. Neither your receipt of this notice nor your timely return of a completed Consent to Join Lawsuit form means that you have a valid claim or that you are entitled to any monetary recovery. Any such determination must still be made by the court. Plaintiffs' Counsel makes no guarantees or representations about the outcome of this lawsuit.

## 8.   <u>YOUR IMMIGRATION STATUS DOES NOT MATTER IN THIS CASE</u>

You are entitled to be paid minimum wages for all hours worked and, when applicable, overtime wages under the FLSA even if you are not otherwise legally entitled to work in the United States. Your immigration status does not affect your right to participate in this case.

**9.**     <u>**NO RETALIATION IS PERMITTED AGAINST YOU FOR JOINING THIS LAWSUIT**</u>

       Federal law prohibits Outback Defendants from discharging or in any other manner discriminating against you because you join this lawsuit or in any other way have exercised your rights under the FLSA.

**10.**     <u>**TO OBTAIN MORE INFORMATION**</u>

       Further information about this Notice, the deadline for returning a Consent to Join Lawsuit form, and answers to questions concerning this lawsuit may be obtained by writing, telephoning, or e-mailing the Plaintiffs' counsel at the telephone numbers and addresses above.

**DO NOT CONTACT THE COURT, THE COURT'S CLERK, OR THE JUDGE.  THEY ARE NOT PERMITTED TO ADDRESS YOUR INQUIRIES OR QUESTIONS.**

Dated: _____, 2014

Wolf Rifkin Shapiro Schulman & Rabkin, LLP
3556 East Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200
Fax: (702) 341-5300
Email: outbacklawsuit@wrslawyers.com
http://www.wrslawyers.com/

Johnson Becker, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Phone: (800) 279-6386
Fax: (612) 436-1801
http://www.johnsonbecker.com/

Sommers Schwartz, PC
2000 Town Center, Suite 900
Southfield, Michigan 48075
Phone: (800) 783-0989
http://www.sommerspc.com/

**Appendix B**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BROOKE CARDOZA *et al.*,<br><br>    Plaintiffs<br><br>    vs.<br><br>BLOOMIN' BRANDS, INC.; OSI RESTAURANT PARTNERS, LLC; OUTBACK STEAKHOUSE OF FLORIDA, LLC; OS RESTAURANT SERVICES, LLC; and DOES 5 through 100, Inclusive,<br><br>    Defendants | CASE NO.: 2:13-cv-01820-JAD-NJK<br><br>**CONSENT TO JOIN LAWSUIT** |

Having read the notice of my right to join this lawsuit on behalf of all current and former hourly employees of Bloomin' Brands, Inc.; OSI Restaurant Partners, LLC; Outback Steakhouse of Florida, LLC; and OS Restaurant Services, LLC who are or were employed at an Outback Steakhouse restaurant within the past three years ("the Notice"),

1. I understand that this lawsuit asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and concerns the Outback Defendants' alleged failure to pay current and former employees of Outback Steakhouse restaurants minimum wages and overtime wages. The capitalized terms of this consent form have the meanings designated in the Notice.

2. I hereby consent, agree, and opt-in to become a plaintiff in this lawsuit and be bound by any judgment by the court, whether favorable or unfavorable, and any settlement of this action.

3. I designate Plaintiffs and Plaintiffs' Counsel as my agents to make decisions on my behalf concerning this litigation and agree that, by returning this form, I am consenting to the terms and agreements described in sections 4 and 6 of the Notice.

Signature: _____  Print Name: _____

Date Signed: _____  Mailing Address: _____

Telephone: _____  _____

Email: _____

**TO OPT-IN TO AND JOIN THIS COLLECTIVE ACTION LAWSUIT, FILL OUT THIS FORM AND MAIL, FAX, OR EMAIL IT NO LATER THAN [INSERT DATE] TO:**

Wolf Rifkin Shapiro Schulman & Rabkin, LLP
3556 East Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Fax: (702) 341-5300
Email: outbacklawsuit@wrslawyers.com