**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BROOKE CARDOZA, et al., | ) |
| Plaintiff(s), | ) Case No. 2:13-cv-01820-JAD-NJK |
| | ) ORDER |
| vs. | ) |
| | ) (Docket No. 362) |
| BLOOMIN' BRANDS, INC., et al., | ) |
| Defendant(s). | ) |

Pending before the Court is Plaintiffs' motion to compel or for modification of the August 18 Order, which they filed on an emergency basis. Docket No. 362. Defendants filed a response in opposition, and Plaintiffs filed a reply. Docket Nos. 373, 377. The motion came on for hearing on October 15, 2015. Docket No. 383.[1] For the reasons discussed more fully below, the motion to modify the August 18 Order is **GRANTED** in part. The motion to compel is **DENIED** without prejudice.

**I.      BACKGROUND**

This is a wage-and-hour lawsuit involving roughly 9,500 opt-in plaintiffs. On August 18, 2015, the Court ruled that Defendants could propound written discovery on 10% of the opt-in plaintiffs. *See* Docket No. 340 ("August 18 Order"). The Court further ruled that Defendants could take up to 95 depositions of these sampled opt-in plaintiffs, and that Plaintiffs could take one deposition for each

---

[1] A transcript of the hearing is not currently available. Any citations to the hearing will reference the audio recording and the specific time during the hearing at issue.

deposed sampled opt-in plaintiff's manager.  The current dispute before the Court centers on Plaintiffs' counsel propounding 132,860 written discovery requests on Defendants shortly after issuance of the August 18 Order.  Those discovery requests were generated for each of the sampled opt-in plaintiffs selected for written discovery.

The August 18 Order was issued based on competing proposals presented by the parties.  At that time, Plaintiffs requested an order requiring Defendants to produce certain enumerated documents for each sampled opt-in plaintiff and an order allowing it to depose certain managers for each sampled opt-in plaintiff.  *See* Docket No. 331 at 3-4.  While Plaintiffs' proposal allowed for written discovery to be "served upon each of the Sample Discovery Plaintiffs," there was no explicit indication that Plaintiffs themselves would seek to propound written discovery on Defendants for each of the sampled opt-in plaintiffs.  *See id.* at 4.  Given the lack of any request for the sampled opt-in plaintiffs to propound their own discovery, any discussion of such discovery was omitted from the August 18 Order.

The parties currently dispute whether such discovery is proper.  The pending motion to compel or for modification seeks an order compelling Defendants to respond to the propounded discovery or, in the alternative, clarifying that Plaintiffs be allowed to propound written discovery.

## II.    EMERGENCY FILING

As an initial matter, the Court addresses Plaintiffs' request to brief and hear the pending motion on an "emergency" basis.  Emergency motions are being filed in this District on a regular basis.[2]  Given the prevalent misuse of emergency motions in this District and to ensure that future emergency motions are brought with an understanding of the relevant requirements for such a motion, the Court finds it appropriate to outline in some detail the circumstances in which the filing of an emergency motion is proper.  As Judge Dorsey has succinctly surmised, "You keep using that word.  I do not think it means what you think it means."  *United Nat'l Ins. Co. v. Assurance Co. of Am. & Maryland Casualty Co.*, 2014 WL 4960915, *1 (D. Nev. June 4, 2014) (quoting Inigo Montoya from *The Princess Bride* (Act III Communications 1987)).  The Court issues this order to explain the disfavored nature of emergency

---

[2] In the last two weeks alone, the undersigned has received four emergency motions in civil cases.

motions, the technical requirements in filing emergency motions, and the substantive standards that must be met for motions to be considered on an emergency basis.

### A.    Emergency Motions are Disfavored

The filing of emergency motions is disfavored because of the numerous problems they create for the opposing party and the court resolving them. *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193-194 (C.D. Cal. 1989);[3] *see also Painter v. Atwood*, 2014 WL 6871750, *1 (D. Nev. Nov. 25, 2014). A court functions best when the adversarial process is not impeded.  The adversarial process requires thoughtful, developed argument by both parties explaining what the parties' competing positions are, the factual basis for those positions, and the legal authority supporting the arguments presented.  *See, e.g.*, *Maxson v. Mosaic Sales Solutions U.S. Operating Co.*, 2015 WL 4661981, *1 (D. Nev. July 29, 2015).  The Local Rules for this District foster that adversarial process by providing schedules for briefing motions that allow attorneys the time needed to sufficiently present their competing positions. For most motions, the Court provides 14 days to file a response opposing a motion and another 7 days to file a reply brief.  *See* Local Rule 7-2(b)-(c).  In some instances, the Local Rules provide for a longer period for briefing to ensure that attorneys are able to provide the Court with properly developed arguments. Local Rule 7-2(e) (briefing schedule for motions for summary judgment).  Where the parties require even more time to advise the Court of their positions, they may seek an extension of these deadlines.  Local Rule 6-1.  These rules are in place so that both parties have the opportunity to fully present their positions to the Court, giving the Court the ability to rely on thoughtful briefs in making its decision on the pending motion.

Often times, the Court is not in a position to render a thorough opinion on a motion the moment that briefing has been completed.  As parties are undoubtedly aware, the Court sometimes takes weeks or even longer to fully analyze the issues presented and conduct its own independent research.  Drafting

---

[3] The case law discussed herein from the Central District of California refers to "ex parte" motions, which include motions to brief cases outside the normal schedule even though notice may be given to the opposing party.  *See, e.g.*, *Intermagnetics America*, 101 B.R. at 193 (discussing "hybrid ex parte" motions that seek briefing and a hearing outside the framework of the rules).  In this District, those motions are referred to as "emergency" motions.  *See, e.g.*, Local Rule 7-5(d).

1  a thorough order explaining why the Court has reached its conclusion also sometimes takes a significant
2  amount of time.

3      This system provides for the optimal functioning of the Court: the parties have sufficient time
4  to develop and properly present their positions, and the Court has time to thoroughly analyze the
5  arguments made and render a decision. "Safeguards that have evolved over many decades are built into
6  the Federal Rules of Civil Procedure and the Local Rules of this court." *Mission Power Eng'g Co. v.*
7  *Continental Cas. Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995). "Timetables for the submission of
8  responding papers and for the setting of hearings are intended to provide a framework for the fair,
9  orderly, and efficient resolution of disputes." *Intermagnetics America*, 101 B.R. at 193. When parties
10  file motions on an emergency basis, however, this system is thrown out of whack. Rather than having
11  time to fully develop their arguments for presentation to the Court, the opposing party is sometimes left
12  to scramble to put together papers that demonstrate the basic contours of the arguments it would have
13  presented. Similarly, the Court sometimes has a very limited time frame in which to render a decision
14  and must do so based on papers that may not be fully developed.

15      In addition to impeding the adversarial process on which the Court relies, the filing of emergency
16  motions imposes further burdens on the parties and the Court. Most obviously, emergency motions
17  impose a significant administrative burden on the Court and opposing counsel, as both are required to
18  abandon other pressing matters to focus on the pending "emergency." *See, e.g.*, *id.* Other parties are
19  also unfairly delayed in receiving resolution to their motions, which are given less priority as the Court
20  shifts its attention to what is presented as a more urgent dispute. *See, e.g.*, *Mission Power*, 883 F. Supp.
21  at 492. The Court generally prioritizes resolution of those motions that have been pending for a longer
22  period of time in the interest of fairness to all parties, which it cannot do if it is called upon to resolve
23  what is presented as an emergency motion.

24      Lastly, the filing of an emergency motion is rife with the possibility of bad faith gamesmanship.
25  It is not uncommon for the Court to receive emergency motions filed for no apparent legitimate reason
26  on the eve of a deadline or noticed deposition. Often times, the emergency motion itself is fully
27  developed, well-researched, and polished. Such motions carry with them the strong implication that the
28  movant is attempting to game the system by providing itself proper time to present its positions to the

Court but depriving the opposing party of a reasonable opportunity to respond, effectively becoming an *ex parte* motion by which the opposing party has "notice" of its filing but no real chance to adequately respond. Perhaps even more nefarious, attorneys will sometimes manipulate the rules to *de facto* grant themselves the relief they are seeking through the delayed filing of a motion seeking emergency relief. The odor of gamesmanship is often especially pronounced in the context of discovery disputes where it appears parties routinely seek to delay their discovery obligations by filing an emergency motion for protective order on the eve of a discovery deadline or noticed deposition.

"All of this detracts from the fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side." *Id.* at 491. Not surprisingly, the filing of emergency motions is disfavored and is properly confined to only the most limited circumstances.

**B.    Technical Requirements in Filing Emergency Motions**

The Local Rules provide several technical requirements that must be met in filing a motion on an emergency basis. Local Rule 7-5(d) provides the technical requirements for emergency motions generally, while Local Rule 26-7(c) provides the technical requirements for emergency discovery motions more specifically.[4]

First, the face of the motion itself must be entitled an "Emergency Motion" so the Court has prompt notice that expedited relief is being requested. *See, e.g.*, Local Rule 7-5(d).

Second, the emergency motion must not be filed standing alone. It must be accompanied by an affidavit providing several key facts necessary for the Court to determine whether, in fact, an emergency exists and allowing the Court to provide the fairest, most efficient resolution. *See, e.g.*, *United National*, 2014 WL 4960915, at *1 (discussing Local Rule 7-5(d)). This affidavit must include a detailed description of the nature of the emergency. *See id.* The affidavit must also provide the contact

---

[4] A distinction between the two rules is that, in very limited circumstances in which time does not permit the filing of a written motion, emergency discovery motions may be made by telephoning the assigned magistrate judge or district judge. *See* Local Rule 26-7(c). The two rules are otherwise substantially similar.

information (telephone number and office addresses) of the movant and all other affected parties. *See id.*

As with any discovery motion, the affidavit must also provide a certification that, despite personal consultation and sincere effort to do so, the movant was unable to resolve the matter without court action. *See, e.g.*, Local Rule 7-5(d)(3), Local Rule 26-7(b); *see also* Fed. R. Civ. P. 37(a)(1). This requirement carries with it several facets, which are discussed more fully below. It is important to note, however, that the purportedly emergency nature of a dispute does not obviate the requirement to conduct a proper meet-and-confer. *See, e.g.*, *Goben v. Wal-Mart Stores, Inc.*, 2013 U.S. Dist. Lexis 26773, *3-4 (D. Nev. Feb. 27, 2013). To the contrary, a good faith and thorough attempt to resolve the dispute without Court intervention is even more critical when time is of the essence. If the circumstances are such that personal consultation is truly not possible, the movant must provide a detailed explanation why that is the case so the Court can evaluate whether to exercise its discretion to decide the motion despite the lack of a proper pre-filing conference. *See* Local Rule 7-5(d)(3). Similarly, if no notice whatsoever was provided to the opposing party regarding the filing of the motion, the affidavit must include a detailed explanation of why it was not practicable to provide that notice. *See id.*

### C.     Substantive Requirements in Filing Emergency Motions

When a party files a motion on an emergency basis, "[i]t shall be in the sole discretion of the Court to determine whether any such matter is, in fact, an emergency." Local Rule 7-5(d)(3); *see also* Local Rule 26-7(d). Generally speaking, an emergency motion is properly presented to the Court only when the movant has shown (1) that it will be irreparably prejudiced if the Court resolves the motion pursuant to the normal briefing schedule and (2) that the movant is without fault in creating the crisis that requires emergency relief, or at the very least that the crisis occurred because of excusable neglect. *See, e.g.*, *Mission Power*, 883 F. Supp. at 492.

#### 1.     Irreparable Prejudice

Given the importance of protecting a well-functioning adversarial system, courts do not deviate from the default rules for properly briefing and resolving motions without very good reason for doing so. *See, e.g.*, *Maxson*, 2015 WL 4661981, at *1. To establish that the Court should bypass its default procedures, the movant most show that it will be irreparably prejudiced unless its motion is heard on an

6

expedited basis. *See Mission Power*, 883 F. Supp. at 492.  When such prejudice is absent, sufficient justification for bypassing the default briefing schedule does not exist and the request may be properly decided on a non-expedited basis.

## 2.   Lack of Fault

Emergency motions "are not intended to save the day for parties who have failed to present requests when they should have." *Intermagnetics America*, 101 B.R. at 193.  The party seeking emergency relief must demonstrate that it is not at fault in creating the situation that it asserts necessitates resolution of its motion on an expedited schedule. *See Painter*, 2014 WL 6871750, at *1. This showing is not focused on whether the opposing party is at fault for the underlying dispute at issue in the motion.  That is not the relevant inquiry.  "It is the creation of the crisis–the necessity for bypassing regular motion procedures–that requires explanation." *Mission Power*, 883 F. Supp. at 493.

This inquiry requires several basic facts from the movant.  First, when did the movant become aware of the issue in dispute?  Second, was the movant diligent in attempting to resolve the dispute and/or in bringing that dispute to the Court's attention as soon as practicable?  Third, was the movant otherwise at fault for creating the crisis situation?  When an attorney knows of the existence of a dispute and unreasonably delays in bringing that dispute to the Court's attention until the eleventh hour, the attorney has created the emergency situation and the request for relief may be denied outright. *See Allstate Ins. Co. v. Nassiri*, 2011 WL 4905639, *1 (D. Nev. Oct. 14, 2011) (overruling objections to magistrate judge order finding an emergency motion to quash subpoena was untimely when three-weeks' notice was provided for a deposition but the motion to quash was filed only three days before the deposition); *see also Painter*, 2014 WL 6871750, at *1 (requiring parties to comply with the deadline to file pretrial order where emergency motion was filed two business days before deadline because the movant's attorney waited roughly 30 days to file the motion).

## D.   Analysis

In this case, Plaintiffs initially filed their pending motion on an emergency basis without meeting almost any of the above technical or substantive requirements.  The motion did include in the caption that the motion was filed on an emergency basis. *See* Docket No. 362 at 1.  Most significantly, however, the motion failed to supply any reason whatsoever for the request for expedited briefing and

consideration of the motion.  Plaintiffs simply included an unadorned request for emergency treatment of the pending motion.  As the above discussion makes abundantly clear, such a request is improper and the Court therefore denied the request for emergency treatment of the motion.  *See* Docket No. 363.

Plaintiffs then filed a supplemental request for emergency treatment.  Docket No. 364.  That supplement provided several specific reasons for expedited review, which all related to the need for urgent resolution to ensure that the discovery schedule could continue as currently ordered.  *See* Docket No. 364 at 2-3.  Moreover, the papers made it appear as if Plaintiffs' counsel only learned of the discovery dispute a few days earlier when they received Defendants' objections to the discovery requests and that they then promptly proceeded to meet-and-confer on the issue.  *See, e.g.*, Docket No. 362-1 at ¶¶ 4-8 (discussing service of the discovery requests on August 26, 2015, receipt of objections on September 25, 2015, and a meet-and-confer process beginning on September 28, 2015).  In those circumstances, the Court granted the request for emergency treatment of the pending motion.  *See* Docket No. 365.

Based on new information provided by Defendants, however, it appears that the request for emergency consideration of the pending motion should have been denied.  The primary dispute at issue is whether the sampled opt-in plaintiffs are permitted to propound discovery pursuant to the August 18 Order and/or whether that order should be amended to enable such discovery.  The existence of this dispute became apparent to Plaintiffs' counsel a few days after the issuance of the August 18 Order.  *See, e.g.*, Docket No. 374 at ¶ 4; Docket No. 374-2.  On August 20, 2015, Plaintiffs' counsel wrote to Defendants' counsel that "it is Plaintiffs' position that they are entitled to take written discovery from Defendants regarding the Discovery Opt-Ins similar to Defendants, meaning written discovery of all personnel and of all records touching upon each Discovery Op-Ins' employment."  Docket No. 374-2 at 3.  On August 25, 2015, Defendants' counsel responded as follows:

> We disagree that the Order "entitle[s]" Plaintiffs to take "written discovery of all personnel [sic] and all records touching upon each Discovery Op-Ins [sic] employment." Plaintiffs requested an order that required "Defendants [to] produce the following documents for each of the Sample Data Plaintiffs: a) personnel files; b) work schedule data; c) clock-in/clock-out data; and d) wage compensation data," which Judge Koppe already considered and did not grant. *See* ECF Nos. 331 at 3, 340. To the extent that Plaintiffs are seeking "written discovery" in addition to the production of those documents, Plaintiffs did not meet and confer about such discovery prior to filing their opt-in discovery plan, nor did they request such discovery in their opt-in discovery plan

> thereby depriving Defendants of an opportunity to either reach an agreement with Plaintiffs to be incorporated into the opt-in discovery proposals or to brief the issue and have it considered by the Court.

Docket No. 374-2 at 2. Hence, the existence of the current dispute was known to Plaintiffs' counsel by August 25, 2015. And yet Plaintiffs' counsel waited for more than a month to bring the dispute to the Court's attention, filing the instant motion on September 30, 2015, and then seeking emergency treatment of their motion based on upcoming discovery deadlines.[5] That decision to wait is especially puzzling given Plaintiffs' counsel's later protestations that the "aggressive schedule set by the Court" made it especially important for prompt resolution of the dispute. *See* Docket No. 364 at 3. Plaintiffs' counsel was well aware of that schedule in August when they made the decision to forego requesting relief from the Court and proceeded to propound 132,860 written discovery requests that Defendants' counsel had already argued were improper.

In short, Plaintiffs' counsel created the emergency situation.[6] In light of the above, the request for emergency relief was not proper and the Court will only address the merits of the motion in the limited fashion discussed more fully below. The other issues in dispute must be brought to the Court in a proper manner.

## III.   MEET AND CONFER

"Discovery is supposed to proceed with minimal involvement of the Court." *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986). Counsel should strive to be cooperative, practical and sensible, and should seek judicial intervention "only in extraordinary situations that implicate truly significant interests." *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). A threshold

---

[5] Plaintiffs' counsel argued at the hearing that bringing the dispute to the Court's attention in August would have amounted to seeking an advisory opinion. *See* Hearing Rec. (10/15/2015) at 1:08 -1:09 p.m. This contention borders on the ridiculous. The parties were disputing at that time the meaning of the August 18 Order and the scope of discovery allowed in light of that order. Plaintiffs have now moved to modify that order, which is the same relief they could have sought in August.

[6] The Court herein focuses on Plaintiffs' counsel's knowledge of the existence of the pending dispute. Their fault in creating the emergency situation is compounded by the fact that they did not seek the disputed discovery when presenting their discovery proposal to the Court in the first place, leading to its omission from the August 18 Order. *See* Section I.

1    issue in the review of any motion to compel is whether the movant made adequate efforts to resolve the

2    dispute without court intervention.   Federal Rule of Civil Procedure 37(a)(1) requires that the party

3    bringing a motion to compel discovery must "include a certification that the movant has in good faith

4    conferred or attempted to confer with the person or party failing to make disclosure or discovery in an

5    effort to obtain it without court action."   Similarly, Local Rule 26-7(b) provides that "[d]iscovery

6    motions will not be considered unless a statement of the movant is attached thereto certifying that, after

7    personal consultation and sincere effort to do so, the parties have not been able to resolve the matter

8    without Court action."

9         Judges in this District have held that "personal consultation" means the movant must "personally

10   engage in two-way communication with the nonresponding party to meaningfully discuss each contested

11   discovery dispute in a genuine effort to avoid judicial intervention." *ShuffleMaster, Inc. v. Progressive*

12   *Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996).   The consultation obligation "promote[s] a frank

13   exchange between counsel to resolve issues by agreement or to at least narrow and focus matters in

14   controversy before judicial resolution is sought." *Nevada Power v. Monsanto*, 151 F.R.D. 118, 120

15   (D.Nev.1993).   To meet this obligation, parties must "treat the informal negotiation process as a

16   substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes."

17   *Id*.  This is done when the parties "present to each other the merits of their respective positions with the

18   same candor, specificity, and support during the informal negotiations as during the briefing of discovery

19   motions." *Id*.  To ensure that parties comply with these requirements, movants must file certifications

20   that "accurately and specifically convey to the court who, where, how, and when the respective parties

21   attempted to personally resolve the discovery dispute." *ShuffleMaster*, 170 F.R.D. at 170.   Courts may

22   look beyond the certification made to determine whether a sufficient meet-and-confer actually took

23   place. *See, e.g.*, *F.D.I.C. v. 26 Flamingo, LLC*, 2013 WL 2558219, *1 (D. Nev. June 10, 2013) (quoting

24   *De Leon v. CIT Small Business Lending Corp.*, 2013 WL 1907786 (D. Nev. May 7, 2013)).

25        With respect to the pending motion to compel, Plaintiffs' counsel provided a certification that

26   a good faith meet-and-confer had been conducted. *See, e.g.*, Docket No. 362 at 2.   As Defendants'

27   opposition makes clear, however, the meet-and-confer process did not include meaningful discussion

28   as to many of the specific objections that Defendants raised in response to the discovery now in dispute.

*See, e.g.*, Docket No. 373 at 11-13; *see also* Docket Nos. 362-8, 362-9, 362-10 (letters regarding meet-and-confer omitting reference to any specific objections raised by Defendants)*.*[7]  Plaintiffs' counsel acknowledged at the hearing that a proper meet-and-confer was not conducted with respect to the individualized objections. *See* Hearing Rec. (10/15/2015) at 1:16 - 1:17 p.m.[8]  The Court finds that the truncated discussion during the meet-and-confer process was insufficient to meet the counsel's obligations to engage in a meaningful discussion as to each discovery dispute with the same specificity and support during that process as they would in briefing a subsequent motion.

In the circumstances, the Court will resolve herein the threshold issue of whether Plaintiffs are permitted to propound written discovery for the sampled opt-in plaintiffs.  The Court will resolve that issue through the alternative motion to modify the August 18 Order.  The propriety of the disputed discovery is not otherwise properly before the Court, and the motion to compel is DENIED without prejudice.

## IV.    WRITTEN DISCOVERY PROPOUNDED BY SAMPLED OPT-IN PLAINTIFFS

The Court will now turn to whether Plaintiffs should be permitted to propound discovery on Defendants for each of the sampled opt-in plaintiffs.  Neither party presents significant authority analyzing this issue.  Instead, both parties rely primarily on the same case in presenting their competing positions, a case which explicitly discusses the issue in a single sentence. *See Cranney v. Carriage Servs., Inc.*, 2008 WL 2457912 (D. Nev. June 16, 2008).  In that case, the court addressed the discovery that should be allowed with respect to opt-in plaintiffs in FLSA actions.  Although some courts have treated opt-in plaintiffs in a collective action as ordinary party plaintiffs subject to the full range of discovery, the *Cranney* court opted for the alternative approach of allowing some individualized

---

[7] Similarly, Plaintiffs' motion does not address the specific objections raised, but rather focuses on the threshold issue of whether Plaintiffs were permitted to propound the written discovery generally.

[8] At the hearing, Plaintiffs' counsel took the position that there was no reason to meet-and-confer regarding any issue other than the threshold issue of whether the sampled opt-in plaintiffs could propound discovery. *See* Hearing Rec. (10/15/2015) at 1:16 p.m.  Plaintiffs' counsel fails to explain how, in the event the Court agreed with him on the primary dispute, the Court could then compel Defendants to respond to 132,860 written discovery requests without first determining whether Defendants' other objections render further response improper.

discovery with reasonable limitations.  2008 WL 2457912, at *2-3.  In particular, the court noted that the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of collective actions, but that fairness dictates that the defendants should be permitted to conduct sufficient discovery to support a motion to decertify the collective action.  *Id.* at 3.  To decide the extent of discovery allowed, the court turned to the factors outlined in Federal Rule of Civil Procedure 26(b)(2)(C), including whether the burden of the discovery outweighs its likely benefit.  *Id.* Taking that into consideration and in the circumstances of that case, the court permitted the defendants to obtain individualized discovery from 10% of the opt-in plaintiffs.  *Id.*  Critically important to the instant dispute in this case, the court also decided that the defendants would be responsible for responding to plaintiffs' discovery from the same group.  *Id.*

Based on the circumstances of this case, the arguments presented, and the *Cranney* decision, the Court finds that Plaintiffs should be permitted to propound some written discovery on Defendants.  This discovery will have its limits, however.  Such discovery must be relevant to certification issues.  In addition, Plaintiffs have not shown based on the record currently before the Court that their need for the discovery as currently propounded is sufficient to outweigh the burden on Defendants in responding.  While the Court makes no final determination herein as to the extent of discovery that Plaintiffs should be permitted on behalf of the sampled opt-in plaintiffs, it appears that the discovery already propounded is excessive in light of the factors in Federal Rule of Civil Procedure 26(b)(2)(C).[9]

Lastly, the Court agrees with Defendants that concurrently serving and answering written discovery in this case is not proper.  It appears that some of the sampled opt-in plaintiffs may not respond to Defendants' discovery requests and may otherwise abandon their claims.  It makes little sense for Defendants to respond to written discovery for such sampled opt-in plaintiffs.  Moreover, it is not clear that all of the discovery requests will apply to all of the sampled opt-in plaintiffs given that the nature of some of their claims may vary, but the exact nature of their claims may not be known until they respond to Defendants' discovery requests.  *See* Hearing Rec. (10/15/2015) at 1:27 - 1:28 p.m.  In these

---

[9] In addition, based on the representations at the hearing, there appears to be no need for Defendants to prepare four separate responses to the discovery requests.

circumstances, the best approach is to stagger the deadlines for discovery from the sampled opt-in plaintiffs and Defendants so that these factors may be taken into consideration before discovery is propounded on behalf of the sampled opt-in plaintiffs.

With the guidance provided above, counsel are ordered to meet-and-confer and to submit a joint proposal on proceeding with this phase of discovery. That proposal shall include the ability of the sampled opt-in plaintiffs to propound written discovery. While it appears based on the current record that the extent of written discovery permitted the sampled opt-in plaintiffs should be less than what is allowed Defendants, the Court will not determine the precise amount at this time and counsel must confer on that issue.[10] The joint proposal must also provide a plan for staggering the discovery from the sampled opt-in plaintiffs and Defendants. The Court is cognizant that the guidance provided herein may require extending the deadlines currently in place, and counsel may include a request to extend those deadlines in their joint proposal. The joint stipulated proposal must be filed no later than October 30, 2015.[11]

**V.    CONCLUSION**

For the reasons discussed more fully above, the motion to modify the August 18 Order is **GRANTED** in part. The parties shall promptly confer in light of the guidance provided in Section IV. The motion to compel is **DENIED** without prejudice.

IT IS SO ORDERED.

DATED:  October 16, 2015

_____
NANCY J. KOPPE
United States Magistrate Judge

---

[10] Counsel should also confer on whether it makes sense for Defendants to produce certain documents without a formal written discovery request. If so, that should be factored into the amount of discovery the parties agree should be allowed for the sampled opt-in plaintiffs.

[11] The Court trusts that counsel can resolve these issues without bringing a further dispute before the Court. Setting the parameters of discovery is expected to be accomplished through stipulation. *See, e.g.*, Local Rule 26-1(d). The Court again reiterates that counsel should cooperate with one another in formulating an appropriate discovery plan and should only seek further Court involvement as a last resort.